**GOVERNMENT OF the VIRGIN ISLANDS, Appellant,**

**v.**

**Arthur PEMBERTON.**

**No. 86–3116.**

United States Court of Appeals, Third Circuit.

Argued Dec. 5, 1986.

Decided March 13, 1987.

Leroy A. Mercer, Atty. Gen., Jacqueline A. Drew, Richard Baker (argued), Asst. Attys. Gen., Dept. of Law, St. Thomas, V.I., for appellant.

Douglas A. Brady (argued), Jacobs & Brady, Christiansted, St. Croix, V.I., for appellee.

Before SLOVITER, STAPLETON and ROSENN, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

The Government of the Virgin Islands appeals from the order of the District Court of the Virgin Islands, Appellate Division, affirming the order of the Territorial Court of the Virgin Islands dismissing an information against appellee Arthur Pemberton on the ground that the delay in bringing Pemberton to trial violated the speedy trial guarantee of the Sixth Amendment. In its opinion, the Appellate Division also suggested that the information was defective.

### I.

### Facts

Pemberton was arrested on November 28, 1983 together with Sergio Figueroa following an incident that evening when Orville Holder, the Assistant Manager of the Marriott In Flight Services office at the Alexander Hamilton Airport, St. Croix, Virgin Islands, surprised two men on the Marriott premises. According to the affidavit filed in support of the information, the lock of an outer security gate had been broken off, and the knob to the office door had been removed and the door opened. In addition, the door to a tool room on the premises had been pried open. The two men were crouched in a doorway in the vicinity of the tool room. Holder shouted at the intruders who ran away.

A police officer responding to the call picked up Pemberton and Figueroa walking on the road near the airport, and they were identified by Holder as the intruders. That same night, present counsel, Douglas A. Brady, was appointed for Pemberton, and bail was set at $100,000. A motion to reduce bail was promptly filed with the Territorial Court, and Pemberton was released when bail was reduced to $10,000 the following day, November 29, 1983.

On December 1, 1983, the Attorney General of the Virgin Islands filed an information in the Territorial Court charging Pemberton with third degree burglary in violation of 14 V.I.C. § 444(1). There was a hearing on January 5, 1984, at which Pemberton was informed of his rights and given a copy of the information. On January 18, 1984, Pemberton pleaded not guilty and demanded a jury trial. Pemberton was represented at the January 5 and January 18 hearings by Joseph Ponteen, an attorney with the Office of the Public Defender.

On March 14, 1985, Pemberton, through his present counsel, filed a motion to dismiss all charges on the ground that the failure to try him or even set a trial date violated his Sixth Amendment right to a speedy trial. On June 6, 1985, the Territorial Court granted Pemberton's motion to dismiss the information and the government appealed to the District Court of the Virgin Islands, Appellate Division, which affirmed the order on January 27, 1986.

### II.

### Speedy Trial Right

The decisions of the Territorial Court and the Appellate Division in this case preceded the recent opinion of this court holding, under circumstances similar to those here, that a delay of 18 months between the filing of the information and trial did not deny defendant his constitutional right to a speedy trial. *See Government of the Vir-*

*gin Islands v. Burmingham,* 788 F.2d 933, 936–37 (3d Cir.1986).

In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Court adopted a four-part balancing test to determine whether delays in bringing a criminal defendant to trial violate the Sixth Amendment guarantee.[1] Such balancing is necessary because it is "impossible to determine with precision when the [speedy trial] right has been denied." *Id.* at 521, 92 S.Ct. at 2187. Under the *Barker* test, the factors to be considered include the length of the delay, the reasons for the delay, the defendant's assertion of the right, and prejudice to the defendant. *Id.* at 530–33, 92 S.Ct. at 2191–93.

The first *Barker* factor, the length of the delay, "defines a threshold in the inquiry: there must be a delay long enough to be 'presumptively prejudicial.'" *United States v. Loud Hawk,* 474 U.S. 302, 106 S.Ct. 648, 655, 88 L.Ed.2d 640 (1986) (quoting *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192). However, "the length of the delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker,* 407 U.S. at 530–31, 92 S.Ct. at 2191–92. Thus, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* at 531, 92 S.Ct. at 2192. In *United States ex rel. Stukes v. Shovlin,* 464 F.2d 1211, 1214 (3d Cir.1972), this court held that a delay of fourteen months from arrest to trial was sufficiently lengthy to warrant further consideration in a murder prosecution. A *fortiori,* the nearly sixteen month delay without trial on a third degree burglary charge warrants inquiry into the other *Barker* factors.

The second *Barker* factor to be considered is the reason for the delay. The only explanation given for the delay in trying Pemberton was that the case was not listed for trial by the Territorial Court. In *Barker,* the Court distinguished between a deliberate attempt to delay the trial in order to hamper the defense, which

would be weighed heavily against the government, and a "more neutral reason" such as negligence or overcrowded courts which would be weighed less heavily against the government. 407 U.S. at 531, 92 S.Ct. at 2192. Nevertheless, "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* In *Loud Hawk,* the Court declined to accord delays caused by the government's interlocutory appeals any effective weight towards the defendants' speedy trial claims because there was no showing of bad faith or dilatory purpose on the government's part, and the appeals were reasonable. 106 S.Ct. at 656. *See also Government of the Virgin Islands v. Burmingham,* 788 F.2d at 937 (thirteen month delay in deciding motion by defendant "justified by the Territorial Court's desire to seek clarification of the law"). In this case, the Appellate Division concurred in the conclusion of the Territorial Court "that although the delay in this cause was to some extent attributable to the Trial Court the Government, in the final analysis, bears the responsibility of advancing prosecutions filed by it to trial." App. at 2–3. We do not disagree. However, in the absence of any showing of bad faith or dilatory purpose by the prosecution, this factor cannot weigh heavily against the government.

The third *Barker v. Wingo* factor, defendant's assertion of his right to a speedy trial, weighs heavily against Pemberton. Pemberton's only demand for a speedy trial came upon his motion to dismiss. In *Barker,* the Court stated:

Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's as-

---

**1.** The Sixth Amendment provides in relevant part:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial.

sertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

407 U.S. at 531–32, 92 S.Ct. at 2192–93.

■ Pemberton argues that his present attorney, appointed at the time of the arrest, was unaware of the filing of an information and the arraignment, at which Pemberton was represented by counsel from the Public Defender's Office. However, there is record evidence in the form of the Memorandum Record of Proceeding signed by the clerk, which Pemberton has not disputed, that states that Pemberton received a copy of the information on January 5, 1984. Pemberton acknowledged in writing having received the Memorandum Record of Proceeding. Whatever the reason for the different counsel at the January 5 and January 18 proceedings, Pemberton was counselled and cannot disclaim knowledge of the proceedings. Moreover, his present counsel was aware of the initial arrest, and has not suggested why he failed to inquire as to further proceedings or the disposition of the matter. The possibility that if Pemberton had not filed his motion "this matter would still be lingering in obscurity without apparent interest on the part of the Territorial Court or the government in seeing it concluded," Appellee's Brief at 11, does not relieve Pemberton of his obligation under *Barker v. Wingo* to make a reasonable assertion of his speedy trial right. Thus, we agree with the Territorial Court that "this particular factor must be weighed against the defendant." App. at 10.

The fourth *Barker* factor, prejudice to the defendant, must be assessed in light of certain of the interests which the speedy trial right was designed to protect: preventing oppressive pretrial incarceration, minimizing anxiety and concern of the accused, and limiting the possibility that the defense will be impaired. 407 U.S. at 532, 92 S.Ct. at 2191. It is undisputed that Pemberton has not been incarcerated since his first night in jail because he was thereafter accorded bail that he was able to meet.

Pemberton argues that he was not free to leave the territory. He has put nothing on record as to any need to do so. He also argues that potential defense witnesses may become unavailable or that their memories may have faded. The Court in *Loud Hawk* stated that the mere possibility of absence or loss of memory of witnesses in a case is not sufficient to make out a speedy trial violation, since "delay is a two-edged sword. It is the government that bears the burden of proving its case beyond a reasonable doubt. The passage of time may make it difficult or impossible for the Government to carry this burden." 106 S.Ct. at 656.

Pemberton argues that his "family life has been seriously disrupted and he has been living under a cloud of anxiety, suspicion, and hostility." App. at 18–19; *see also* Appellee's Brief at 13. In *Moore v. Arizona*, 414 U.S. 25, 27, 94 S.Ct. 188, 190, 38 L.Ed.2d 183 (1973) (per curiam), the Court recognized that public accusation " 'may disrupt [the defendant's] employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends,' " (quoting *Barker v. Wingo*, 407 U.S. at 537, 92 S.Ct. at 2195 (White, J., concurring)), and held that this form of prejudice must be considered in ascertaining whether there has been a speedy trial violation. *See also United States v. Dreyer*, 533 F.2d 112, 115 (3d Cir.1976). On the other hand, this court has recognized that "a certain amount of anxiety and other forms of personal prejudice to the accused is inevitable in a criminal case." *Id.* at 116. Thus, for example, in *Government of the Virgin Islands v. Burmingham*, 788 F.2d 933, 937 (3d Cir.1986), we found no speedy trial violation where the defendant could show no "unusual burden of anxiety." We stated, "[a]bsent impairment of the defense, pretrial incarceration, or any evidence of unusual psychological distress, and absent unjustifiable procrastination by the government, we do not believe that a delay of eighteen months between indict-

ment and trial requires us to grant Burmingham's speedy trial claim predicated on *Barker v. Wingo." Id.*

Pemberton has failed to provide any evidence of specific psychological disorders suffered as a result of the pending criminal charges comparable to that produced in *United States v. Dreyer,* 533 F.2d at 116–17. Moreover, we cannot ignore the fact that the acute anxiety Pemberton now claims he was suffering did not induce him to make some inquiry of the government or the court as to the status of the proceedings.

■ We conclude, after consideration of the length of the delay, the absence of any evidence of improper motive on the part of the government, Pemberton's failure to assert his right to a speedy trial before filing the motion to dismiss, and the limited, if any, prejudice to Pemberton, that there has been no constitutional violation that requires dismissal of the information. In so concluding, we note that other circuits have also found no Sixth Amendment violation under similar circumstances. *See, e.g., United States v. Canales,* 573 F.2d 908, 909–10 (5th Cir.1978); *United States v. Gibson,* 513 F.2d 978, 980–82 (6th Cir.1975); *United States v. Jones,* 475 F.2d 322 (D.C.

Cir.1972) (per curiam). Our conclusion that the dismissal on speedy trial grounds must be reversed and the matter remanded does not signify any approval of the unexplained failure, apparently attributable to the Territorial Court, to proceed expeditiously. Nonetheless, we cannot hold that these circumstances amount to a Sixth Amendment violation.[2]

### III.

### *Sufficiency of the Information*

Pemberton argues that in any event the information charging him with burglary in the third degree in violation of 14 V.I.C. § 444(1) was fatally defective. That statute makes it an offense to break and enter a building "with intent to commit an offense therein."[3] Pemberton was charged with breaking and entering a building "with intent to commit an offense therein," but the information did not state the offense Pemberton intended to commit upon entry.[4] Although it appears that this issue was not raised by Pemberton in either the Territorial Court or the Appellate Division, the latter court, in a footnote, stated that "the information in this case would be subject to dismissal since it fails to properly

---

2. We do not reach Pemberton's contention that his right to equal protection of the laws would be violated by his trial in the Territorial Court of the Virgin Islands beyond the date permissible for trial in the District Court of the Virgin Islands, which has concurrent jurisdiction over the offense with which he is charged. This issue, which is predicated on Pemberton's understanding that the Speedy Trial Act is applicable to territorial offenses prosecuted in the District Court but not in the Territorial Court, was not raised by him in either of the courts below. Contentions not properly presented to the trial court for consideration will not be noticed on appeal. *Toyota Industrial Trucks U.S.A., Inc. v. Citizens National Bank of Evans City,* 611 F.2d 465, 470 (3d Cir.1979).

3. 14 V.I.C. § 444 provides:
   Whoever—
   (1) with intent to commit an offense therein, breaks and enters a dwelling house, building, or structure or any part thereof; or
   (2) being in any dwelling house, building, or structure or any part thereof, commits an offense therein and breaks out of the same—
   is guilty of burglary in the third degree and shall be imprisoned not more than five years

and if the conviction is a second or subsequent conviction under this chapter, then not less than one year. Notwithstanding the provisions of Title 5, chapters 313, 405 and 407, Virgin Islands Code, or any other provision of law, no portion of the minimum period of imprisonment established by this section shall be suspended, and no person convicted under this section which conviction is a second or subsequent conviction under this chapter shall be placed on probation or be eligible for parole until he shall have been imprisoned for at least one year.

4. The information charged:
   On or about the 28th day of November, 1983 in the Virgin Islands of the United States, Judicial Division of St. Croix, ARTHUR PEMBERTON, did, with intent to commit an offense therein, breaks and enters a building, that being Marriot In Flight Services Office, located at the Alexander Hamilton Airport, namely by breaking off the lock of an outer iron security gate, and removing the door knob of said door, thereby gaining entry, all in violation of 14 VIC 444(1).
   App. at 14.

charge a crime ... [because] it does not state the specific offense the accused intended to commit upon gaining entry." App. at 4.

■ This court has interpreted Fed.R. Crim.P. 12(b)(2) to mean that an objection to an information on the ground that it fails to charge an offense may be raised for the first time on appeal. *Government of the Virgin Islands v. Greenidge,* 600 F.2d 437, 439 n. 2 (3d Cir.1979). Thus, we turn to consider the sufficiency of the information. That inquiry, under either the Sixth Amendment [5] or Rule 7(c) of the Federal Rules of Criminal Procedure,[6] requires us to ascertain first, whether the indictment or information contains the elements of the offense intended to be charged "and sufficiently apprises the defendant of what he must be prepared to meet," and, second, "whether the record shows with accuracy to what extent he may plead a former acquittal or conviction" in the event of subsequent prosecution. *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962) (quoting *Cochran and Sayre v. United States,* 157 U.S. 286, 290, 15 S.Ct. 628, 630, 39 L.Ed. 704 (1895)).

■ An indictment or information may set forth the offense in the words of the statute itself only if " 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.' " *Id.,* 369 U.S. at 765, 82 S.Ct. at 1047 (citation omitted). *See also Hamling v. United States,* 418 U.S. 87, 117–18, 94 S.Ct. 2887, 2907–08, 41 L.Ed.2d 590 (1974). In *Russell,* defendants charged under a statute prohib-

iting persons summoned before a congressional subcommittee from refusing to answer questions "pertinent to the question under inquiry," 2 U.S.C. § 192, were held to have been inadequately informed of the nature of the offense charged because the indictments failed to identify the subject under congressional subcommittee inquiry at the time the witnesses were interrogated. The Court held that pertinency of the subject under inquiry is "the very core of criminality" under 2 U.S.C. § 192, 369 U.S. at 764, 82 S.Ct. at 1047, and thus the indictments required the defendants "to go to trial with the chief issue undefined." *Id.* at 766, 82 S.Ct. at 1048.

This court has previously held that an indictment charging violation of a statute requiring specific intent to commit another offense must allege that intent with particularity. In *United States v. Deutsch,* 243 F.2d 435 (3d Cir.1957), we held that an indictment under a statute making it a crime to "conspire ... to commit any offense against the United States", 18 U.S.C. § 371, must specify the offense that was the object of the alleged conspiracy. The charge of conspiracy in the language of the statute was wholly inadequate. *Contrast United States v. Addonizio,* 451 F.2d 49, 58–59 (3d Cir.1971), *cert. denied,* 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972) (indictment charging conspiracy to obstruct, delay, impede and thwart construction undertaken on behalf of the City of Newark in violation of 18 U.S.C. § 1951 alleges the essential facts constituting the offense charged).

■ Intent to commit an offense upon entry is an essential element of the crime of burglary in the third degree under 14

---

5. The Sixth Amendment provides, in relevant part:

In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation.

6. Fed.R.Crim.P. 7(c) provides:

The indictment or information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged.

The Federal Rules of Criminal Procedure are applicable to all criminal proceedings in the

District Court of the Virgin Islands. *See* Fed.R. Crim.P. Rule 54. Rule 7 of the Rules of the Territorial Court provides that:

The practice and procedure in the territorial court shall conform as nearly as may be to that in the district court in like causes, except where there is an express provision in the law or these rules to the contrary.

5 V.I.C.App. IV R. 7. *See also Government of the Virgin Islands v. David,* 20 V.I. 259, 262 (Territorial Ct.1984) (applying Fed.R.Crim.P. Rule 7(c)).

V.I.C. § 444(1), which is punishable by up to 5 years imprisonment. Without such intent, defendant may at most be guilty of forcible and unlawful entry under 14 V.I.C. § 1747, punishable by a prison sentence of one year.[7] Furthermore, a defendant who is not given notice of which offense the prosecution charged was intended by the entry would be substantially limited in the preparation of a defense. Thus, an information charging burglary that fails to state the offense defendant intended to commit upon entry is inadequate under the first inquiry mandated by *Russell* because it does not contain an essential element of the offense intended to be charged and insufficiently apprises the defendant of what he must be prepared to meet.

A similar issue was considered by the Court of Appeals of the District of Columbia in *United States v. Thomas,* 444 F.2d 919, 920–24 (D.C.Cir.1971). There the court, relying on the "great weight of authority," held that an indictment charging first degree burglary under the District of Columbia Code, which prohibits entry of a dwelling with the "intent * * * to commit [a] criminal offense" was insufficient because it failed to state the particular offense the defendant intended to commit upon entry into the dwelling. *Id.* at 922. Failure to specify the allegedly intended crime thus failed to give the accused "fair notice of the charge he must meet":

> The above considerations are of particular importance in burglary prosecutions because the actual proof at trial involves evidence of at least two crimes, the unlawful entry and the intent to commit the ulterior crime. In addition, the specific

intent is ordinarily the most important element of the crime because it may be the most difficult to prove. When the ulterior crime can range from crimes like murder, assault and rape to arson and larceny there is a particular need for specificity because of the wide variations in the elements of such ulterior offenses.

*Id.* at 923.

We note that in *Thomas* the defect was in an indictment and thus the court held that the principal harm to the defendant from the lack of precision was the inability to discern the specific underlying offense that the grand jury had in mind when it returned the indictment. *Id.* at 922. In the case of an information, the concern is not the defendant's right to be tried for the offense found by the grand jury, but the defendant's right to be fairly apprised of the evidence he would have to meet at trial.

The government argues that because the issue of the fatally drawn information was never raised at the trial level, it did not have the opportunity to cure the defect by amending the information. *See* Fed.R. Crim.P. 7(e) (permitting an information to be amended at any time before verdict "if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced"). *See also Government of the Virgin Islands v. Bedford,* 671 F.2d 758, 764–65 (3d Cir.1982) (government permitted to amend information at close of government's case when amendment did not allege additional or different offense); 2 W. LaFave & J. Israel, Criminal Procedure § 19.2(g) (1984).[8] In

---

7. 14 V.I.C. § 1747 provides:

Whoever—

(1) uses force or violence in entering upon or detaining any lands or other property, public or private; or

(2) enters another's domicile without the consent of the tenant—shall, except in the cases and in the manner prescribed by law, be fined not more than $200 or imprisoned not more than 1 year, or both.

8. The government does not suggest that a bill of particulars could cure the defect. In *United States v. Critchley,* 353 F.2d 358, 362 (3d Cir. 1965), we stated that a bill of particulars "is not part of an indictment or information" and can

"neither add to nor subtract from the indictment nor change the crime charged." Although *Critchley* involved an indictment, a similar rule has been applied to amendment of an information. *See State v. Ladner,* 613 S.W.2d 951, 954 (Mo.App.1981); *see also* 2 W. LaFave & J. Israel, Criminal Procedure § 19.2, at 458; C. Wright, Federal Practice & Procedure § 129 at 434 (2d ed. 1982). This is to be contrasted with the general rule that if an information is otherwise sufficient, a bill of particulars may be granted to inform defendant of the details of the offense charged. *See, e.g., United States v. Consolidation Coal Co.,* 504 F.2d 1330, 1332 (6th Cir.1974); *see also* 2 W. LaFave & J. Israel, Criminal Procedure § 19.2(f), at 458–59.

*United States v. Skinner*, 272 F.2d 607 (2d Cir.1959) (per curiam), *cert. denied*, 362 U.S. 902, 80 S.Ct. 611, 4 L.Ed.2d 555 (1960), the court upheld a decision by the trial court permitting the government to amend an information that was defective in a manner comparable to the insufficiency here. However, the decision whether to permit such an amendment in this case should be made by the trial court in the first instance.

#### IV.

For the reasons stated above, we will reverse the order of the District Court, Appellate Division, affirming the Territorial Court's dismissal of the information for violation of Pemberton's right to a speedy trial, and will remand this matter to the District Court with directions that it remand to the Territorial Court, which can at that time consider any motion to amend the information filed by the Government of the Virgin Islands.