

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-8-1998

# Virgin Islands v. Moolenaar

Precedential or Non-Precedential:

Docket 96-7766

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

## Recommended Citation

"Virgin Islands v. Moolenaar" (1998). *1998 Decisions.* Paper 3.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/3

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 8, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-7766

GOVERNMENT OF THE VIRGIN ISLANDS,
        Appellant

v.

ROY MOOLENAAR

On Appeal from the District Court of the Virgin Islands
(D.C. No. 95-cr-00112)

Argued December 8, 1997

Before: SLOVITER, Chief Judge,
STAPLETON and MANSMANN, Circuit Judges

(Filed January 8, 1998)

        Carol S. Moore (Argued)
        Maureen P. Cormier
        Office of Attorney General
         of Virgin Islands
        Department of Justice
        Charlotte Amalie, St. Thomas 00802

         Attorneys for Appellant

        Alan D. Smith (Argued)
        Hodge & Francois
        Charlotte Amalie, St. Thomas 00802

         Attorney for Appellee

OPINION OF THE COURT

SLOVITER, Chief Judge.

The Government of the Virgin Islands appeals from the
decision of the District Court of the Virgin Islands Appellate
Division holding that the Information charging Roy
Moolenaar with Burglary in the Second Degree was
insufficient and reversing Moolenaar's conviction.

I.

On March 1, 1994, Moolenaar was charged in a one-
count Information with Burglary in the Second Degree, in
violation of 14 V.I.C. S 443.

The Information provided:

> On or about February 18, 1994, in St. Thomas, U.S.
> Virgin Islands, Roy Moolenaar, no known address, St.
> Thomas, Virgin Islands, did with the intent to commit
> the crime of theft therein, break and enter a dwelling
> house, to wit Ross-Taaneberg #27, in which there was
> present a human being, to wit Altagracia Hoheb, in
> violation of 14 V.I.C. 443.

App. at 3 (emphasis added).

At trial the government presented evidence that on
February 18, 1994, police received a report of breaking and
entering at No. 27 Ross-Taaneberg, which was occupied at
the time of the incident by Altagracia Hoheb, her three
daughters and two grandchildren. Tr. Vol. I at 121, 127.
According to police, an intruder entered through a window,
removed his shoes, opened both the front and back doors
to the house, took house keys from the dead bolt lock, and
rummaged through the house. Tr. Vol. I at 114-115, 209,
Tr. Vol. II at 45. Hoheb was awakened by her daughter, and
instructed her to call the police. Tr. Vol. I at 102-103. One
of Hoheb's daughters saw the intruder by her bedroom and
screamed, and the intruder ran out of the house. Tr. Vol. I
at 91. The police arrived at the residence and saw someone
coming out the front door and after a chase they

2

apprehended Moolenaar. Tr. Vol. I at 130–131. During a subsequent search, Hoheb's keys were found in Moolenaar's jacket pocket. Tr. Vol. I at 136.

Moolenaar did not testify at his trial, but he called as his only witness Jhon [sic] Parsons, who testified that he was with Moolenaar on the night in question and that they were both approached by a car, that an occupant of the car fired shots and that he and Moolenaar both fled in different directions. Tr. Vol. II at 97–100. Moolenaar's attorney later attempted to use this testimony to argue that Moolenaar had entered the house to seek refuge from his assailants, and not with the intent to commit a crime, which is a requisite to Burglary in the Second Degree. Tr. Vol. II at 116.

At the close of the government's case, Moolenaar made a motion under Rule 29 for a Judgment of Acquittal on the basis of insufficient evidence. At oral argument on that motion, he also contended that the Information was insufficient because it stated that the intent of the breaking and entering was to commit theft, whereas theft is not a specified crime in the Virgin Islands. The Territorial Court denied the motion, rejecting the challenge to the sufficiency of the Information on the ground that larceny, which is a crime in the Virgin Islands, is "almost synonymous" with theft, app. at 36, and that Moolenaar had been given ample notice.

Moolenaar was convicted after a two-day jury trial, and was sentenced to 15 years incarceration and assessed $25 as court costs. On appeal, the District Court of the Virgin Islands Appellate Division held that the Information was insufficient, reversed Moolenaar's conviction and remanded the case to the Territorial Court.

II.

The sufficiency of an information, like the sufficiency of an indictment, presents a question of law over which our review is plenary. See United States v. Henry, 29 F.3d 112, 113 (3d Cir. 1994).

3

Federal Rule of Criminal Procedure 7(c), governing the
nature and contents of indictments and informations,
provides:

> (1) In General. The indictment or the information
> shall be a plain, concise and definite written statement
> of the essential facts constituting the offense charged
> . . . . The indictment or information shall state for each
> count the official or customary citation of the statute,
> rule, regulation or other provision of law which the
> defendant is alleged therein to have violated.
>
> * * *
>
> (3) Harmless Error. Error in the citation or its
> omission shall not be ground for dismissal of the
> indictment or information or for reversal of a conviction
> if the error or omission did not mislead the defendant
> to the defendant's prejudice.

Fed. R. Crim. P. 7(c).

In Russell v. United States, 369 U.S. 749 (1962), the
Supreme Court considered the sufficiency of an indictment
of a defendant charged with refusing to answer a question
in testifying before a congressional committee. The Court
referred to a two-part test established in prior cases for
measuring the sufficiency of an indictment, to wit 1)
whether the indictment "contains the elements of the
offense intended to be charged and sufficiently apprises the
defendant of what he must be prepared to meet," and 2)
enables the defendant to plead an acquittal or conviction in
bar of future prosecutions for the same offense. Id. at 763-
64 (citations omitted). We have applied the Russell test
interchangeably to challenges to the sufficiency of an
indictment and an information. See Government of the
Virgin Islands v. Pemberton, 813 F.2d 626, 631 (3d Cir.
1987).

The Virgin Islands statute on Burglary in the Second
Degree provides:

> Whoever, with intent to commit some offense therein
> breaks and enters the dwelling house, building, or
> structure of another in which there is a human being,
> under circumstances not amounting to burglary in the

4

first degree, is guilty of burglary in the second degree.
. . .

14 V.I.C. S 443 (emphasis added).

Thus, the crime of Burglary in the Second Degree
requires that the breaking and entering be with the intent
to commit "some offense." An "offense" is defined in the
Virgin Islands Code as an act committed in violation of a
law of the Virgin Islands and punishable by, inter alia, a
fine or imprisonment. 14 V.I.C. S 1.

The Information charging Moolenaar describes the offense
Moolenaar intended to commit when breaking and entering
as "theft." However, there is no crime denominated "theft"
in the Virgin Islands Code. Instead, the unlawful taking of
property of another in the Virgin Islands is characterized as
"larceny," defined as "the unlawful taking, stealing,
carrying, leading, or driving away the personal property of
another." 14 V.I.C. S 1081(a). We must thus determine
whether the use of the word "theft" instead of "larceny" in
the Information rendered the Information insufficient.

In applying the Russell test, the Territorial Court held
that the totality of the Information gave Moolenaar
sufficient notice of what he was charged with and what he
had to defend. App. at 39. The court noted that Black's Law
Dictionary states that theft is the "popular name" for
larceny and that a dictionary that lay persons would use
makes a similar connection. The court concluded that the
common understanding of "theft" is almost synonymous
with "larceny." App. at 36.

In contrast, the Appellate Division held that the
Information did not state the crime of burglary "because it
does not recite an essential element of that crime, namely,
the offense [the defendant] intended to commit once he got
inside." App. at 12. The court reasoned that a charge which
fails to state a crime is insufficient to apprise a defendant
of what he must be prepared to meet. App. at 12. The
Appellate Division stated that "[w]hether the word `theft'
might have alerted Moolenaar of the gist of what he was
facing is irrelevant because the single count information did
not charge a crime." App. at 13. It stated that "theft" may
be included in the concept of larceny, id., but also

5

suggested that "theft" is a more expansive term than "larceny." App. at 13 n.8.

In addition, the Appellate Division concluded that the Information failed Russell's second requirement because, although the charge clearly delineated the time and place of the burglary, it failed to tell "what crime he is alleged to have intended to commit once he got inside" and would not protect Moolenaar from again being put in jeopardy. App. at 13.

On appeal, the government contends that the Appellate Division erred as a matter of law, and argues that the fact that the Information used a common law term to describe an element of burglary instead of using the statutory language did not render the Information insufficient. We agree.

We know of no authority, and Moolenaar cites none, that supports the Appellate Division's holding that a charge of burglary will be insufficient unless the crime that was intended is framed in the exact statutory language. As set forth by one of the leading commentators, "[f]ailure to allege the statutory elements will not be fatal provided that alternative language is used or that the essential elements are charged in the indictment by necessary implication." 24 Moore's Federal Practice, S 607.04[2][b][ii] (3d ed. 1997).

This is particularly true in the context of burglary when the issue centers on the language used to describe the offense intended in breaking and entering. Thus, for example, in United States v. Dyba, 554 F.2d 417, 419 (10th Cir.), cert. denied, 434 U.S. 830 (1977), the indictment charged the defendant with "burglary of monies" as the underlying offense for a statute that criminalized entry into a bank with the intent to commit "any felony." The court held that although the correct term would have been "larceny of monies," the use of the term "burglary of monies" was sufficient because the term `burglary' "imported an unlawful entry with intent to steal," and "provided the accused with adequate notice of the offense charged." Id.

Similarly, in Johnson v. Turner, 429 F.2d 1152, 1154-55 (10th Cir. 1970), a defendant who was convicted of grand

larceny contended in a petition for habeas corpus that the information was constitutionally defective because it charged merely that defendant "stole" a guitar and failed to identify the specific criminal statute alleged to have been violated. The court denied the petition, holding that the charge fully apprised the defendant of the nature of the charge and of the facts alleged by the prosecution. Id. at 1155.

The authorities on which Moolenaar relies to contend that the Information did not give him sufficient notice are not apposite. In Pemberton, 813 F.2d at 630, the information charging Burglary in the Third Degree alleged merely breaking and entering a building with "intent to commit an offense therein." We held the information was inadequate because it did not contain an essential element of the offense and insufficiently apprised the defendant of what he must be prepared to meet. Id. at 632. To the same effect, in United States v. Thomas, 444 F.2d 919 (D.C. Cir. 1971), the court held insufficient an indictment charging defendant with burglary that merely alleged that he entered a dwelling "with intent to commit a criminal offense therein." Id. at 920. The court held that this language was "impermissibly broad and categorical." Id. at 922.

Similarly, in United States v. Deutsch, 243 F.2d 435, 436 (3d Cir. 1957), the indictment purported to charge a conspiracy to violate bankruptcy laws but merely stated in the relevant portion that the defendants "conspired to commit offenses against the United States." We held that the charge of conspiracy is "in itself a wholly inadequate generality." Id.

The Information charging Moolenaar did more than use the generic term "offense," and instead specifically described the intent of the breaking and entering as to commit "theft." In the context of this case and this Information, we reject the narrow and constricted interpretation of the Appellate Division that because "theft" is not itself an "offense," no crime of burglary was charged. As the Territorial Court noted, the dictionary meanings of larceny and theft are very similar.

"Theft" is neither a word in a foreign language nor a word that is unknown to the Virgin Islands legislature. The

7

Virgin Islands Code includes several other criminal statutes that refer to "theft" in a context that suggests that the term is being used to describe the unlawful taking of property. See, e.g., 14 V.I.C. S 3003 ("theft" by obtaining a credit card through fraudulent means); 14 V.I.C. S 1385 (crime to make a false report of "theft or conversion" of a vehicle); 14 V.I.C. S 1749 (regarding "[u]nauthorized presence on school premises" and providing for consecutive sentences"for conviction on any other count for the same incident of unauthorized presence, such as vandalism, theft or assault"). As the government argues, these references signify that the legislature assumes that the word is so commonplace that its meaning is obvious.

In the context of an Information alleging breaking and entering of a dwelling, we can think of no reasonable interpretation of the phrase "crime of theft" other than larceny. Moolenaar has suggested none. While he argues that a "crime of theft" may encompass embezzlement and fraud, as well as larceny, when the phrase "crime of theft" is used in conjunction with a charge of breaking and entering, it is apparent that it is used to signify larceny. Fraud and embezzlement necessarily involve securing possession of another's property by deception, not by breaking and entering his dwelling. The spirit of Fed. R. Crim. P. 7 requires that we read the Information as a whole and interpret it in a common sense manner. See 24 Moore's Federal Practice, S 607.04[2][b][ii].

We thus conclude that despite the Information's use of the word "theft" instead of the statutory term "larceny," Moolenaar was provided with sufficient notice to satisfy the first requirement of Russell.

With respect to the second element of the Russell inquiry, we see no reason why Moolenaar would be at risk of double jeopardy based on this Information. Moolenaar merely argues that because the Information "fails to charge a crime" there is no way to determine what underlying offense the government sought to prove at trial and thus he would not be protected if he were to be tried again for a crime taking place at the same time and location as the one in the present Information. Appellee's Br. at 10-11.

8

However, in Russell, in holding that the indictment was sufficient to prevent future prosecution, the Court relied on the fact that the indictment contained a description of the acts alleged and specifics such as the time and location of the events in question. Russell, 369 U.S. at 764. Here, too, the Information described the conduct and provided the date and location of the charged offense. Moreover, should any issue arise in the future, Moolenaar can use the entire record of the prosecution to prevent twice being tried for the same crime. Id. We see no realistic danger to Moolenaar of being placed again in jeopardy for the same crime.

Finally, it is significant that Moolenaar does not contend that he was misled or surprised by the Information's use of the term "theft" instead of "larceny." Instead, he merely argues that prejudice to the accused is inherent whenever one is convicted on an information which fails to state a crime.

Our decision in United States v. Hall, 979 F.2d 320 (3d Cir. 1992), provides some guidance. In that case, the indictment charged the defendant with "driv[ing] a motor vehicle upon a highway within [Gettysburg National Military] Park while under the influence of intoxicating liquor" in violation of a Pennsylvania statute through the application of the Assimilative Crimes Act (ACA). Id. at 322. We held that the trial court's jurisdiction should have been based on an applicable federal regulation, rather than the ACA, but concluded that "[t]he citation of the wrong statute in an indictment is not grounds for reversal of a conviction unless the defendant was misled to his or her prejudice. . . . There is no prejudice from the citation to an inapplicable statute when the elements of the two crimes are the same and the defendant was adequately apprised of the charges." Id. at 323.

Moolenaar does not allege any specific prejudice. Moreover, there is ample basis to conclude that Moolenaar was not prejudiced in any way by the technical irregularity in the Information as both the prosecution and the defense focused on whether Moolenaar had the intent to steal. At trial, the prosecution emphasized the taking of the keys from Hoheb's house and the defense sought to prove that Moolenaar entered the house to seek refuge rather than to

9

steal. For example, during closing argument, Moolenaar's counsel focused on the fact that there was no "intent to steal a set of keys." Tr. Vol. II at 113. Further, at several times during cross examination of government witnesses, Moolenaar's counsel inquired into the chain of custody of the keys police found on Moolenaar and their identity. Tr. Vol. I at 166-69, 188. These questions and the strategy of the defense demonstrate that the defense focused on larceny and refute any potential claim of surprise or prejudice.

III.

We therefore conclude that the Appellate Division erred in reversing Moolenaar's conviction. The Information sufficiently charged the Virgin Islands offense of Burglary in the Second Degree.

In reversing Moolenaar's conviction, the Appellate Division focused only on the issue challenging the sufficiency of the Information, and never reached the additional claims raised by Moolenaar in his appeal to that court. The Appellate Division's opinion notes that it did not reach Moolenaar's contentions that the trial court committed plain error by failing to define the crime of theft or larceny and by failing to instruct the jury that larceny and the crime of theft are synonymous, and that he is therefore entitled to a new trial. See App. at 10 n.3. On remand, the Appellate Division will have the opportunity to address these issues.

For the reasons set forth, we will reverse the judgment of the Appellate Division and remand this case to it for further proceedings consistent with this opinion.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit