

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-17-2007

# USA v. Flemming

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-5031

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Flemming" (2007). *2007 Decisions*. Paper 1093.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1093

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-5031

———

UNITED STATES OF AMERICA

v.

GEORGE FLEMMING,

*Appellant*

———

On Appeal from the District Court of the Virgin Islands,
Division of St. Croix
(D.C. Criminal No. 04-cr-00039-2)
District Judge: Honorable Harvey Bartle III

———

Argued May 9, 2007

Before: SLOVITER, STAPLETON, and VAN ANTWERPEN, *Circuit Judges*.

(Filed:   May 17, 2007)

Jomo Meade (Argued)
112 Queen Cross Street
Frederiksted, St. Croix
USVI  00840
          *Counsel for Appellant*

Denise A. Hinds-Roach
Office of the United States Attorney
1108 King Street, Suite 201
Christiansted, St. Croix
USVI  00820

Jason T. Cohen (Argued)
Office of the United States Attorney
United States Courthouse
5500 Veterans Building, Suite 260
Charlotte Amalie, St. Thomas
USVI 00802
          *Counsel for the United States*

———

OPINION OF THE COURT

———

VAN ANTWERPEN, *Circuit Judge*.

Appellant George Flemming appeals his conviction and sentence following a jury trial in the District of the Virgin Islands in which he was convicted of conspiracy to commit wire fraud and program fraud, as well as seventeen counts of wire fraud and seven counts of program fraud.  18 U.S.C. §§ 371, 1343, and 666(a)(2).

The District Court had jurisdiction pursuant to 48 U.S.C. § 1612.  We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  *See United States v. Cooper*, 437 F.3d 324, 327 (3d Cir. 2006).  For the reasons set forth below, we will affirm.

*I.*

Because we write solely for the parties, we set forth only those facts necessary to

our decision.

Flemming owned Mr. G's Maintenance Service, Inc., a company that obtained a contract with the Virgin Islands Housing Authority ("VIHA") to repair 150 housing units in St. Croix in 1998. VIHA paid Flemming's company periodically after it certified that the work for which payment was being made had been satisfactorily completed. The company ultimately received more than $1 million under the contract.

Co-defendant Walter John worked at the VIHA as a procurement officer.[1] At trial, the government introduced evidence that Flemming paid John various sums of money during the life of the contract and that Flemming's payments to John were always made shortly after Flemming received a payment from VIHA. Some of these payments to John were made by check, and the government introduced copies of those checks at trial. Flemming also made cash payments to John, the amounts of which were evidenced by notations in a notebook that Flemming showed to government witness James Parris. In total, Flemming paid John $37,000. The government also established, through the testimony of Yvonne Roebuck, an employee in the VIHA procurement office on St. Croix in 1998 and 1999, that Flemming frequently visited John at his office during the life of the contract.

James Parris, retired Captain of the Virgin Island Housing Authority Police Department, also testified at trial. Prior to the indictment in this case, Parris led an

---

[1]Flemming was originally charged jointly with co-defendant John. The District Court granted the government's motion to sever the cases on March 15, 2006.

3

investigation into an alleged kickback scheme within the VIHA. During the course of his investigation, Parris interviewed Flemming on several occasions. Parris testified that, during the initial interview, Flemming admitted making monetary payments to John and told Parris that the money he gave John was a loan. However, in a subsequent interview, Flemming stated that he and John had an agreement that Flemming would pay John $500 for each unit the company repaired.

Symrah Christopher, an employee in the VIHA accounting department, testified at trial that John telephoned her and asked her to expedite payments to Flemming's company. She explained that on several occasions subsequent to that telephone call, John would send a package to her attention. The package contained a smaller envelope with money and a larger envelope with paperwork to process the payments to Flemming's company. Christopher testified that she received a total of $250 from John to expedite payments, and that several expedited payments were in fact made and sent out ahead of payments to other vendors.

Flemming took the stand in his defense. He admitted that he made monetary payments to John, but he claimed that those payments were a loan. Flemming consistently testified that John asked to borrow money because two of John's family members were sick and that he agreed to lend John money when he had money in his account, i.e. when he received payments from VIHA. Flemming denied that he ever paid John to request expedited payments from VIHA or that he had any knowledge that John paid anyone working for VIHA to expedite payments on his behalf.

4

On August 12, 2004, a grand jury returned a thirty two-count superseding indictment charging Flemming with one count of Conspiracy in violation of 18 U.S.C. § 371, seventeen counts of Wire Fraud in violation of 18 U.S.C. § 1343, and seven counts of Program Fraud in violation of 18 U.S.C. § 666(a)(2). On July 20, 2006, after a four-day trial, the jury returned a guilty verdict as to all counts. On November 17, 2006, the Court sentenced Flemming to 24 months' imprisonment. This timely appeal followed.

*II.*

Flemming raises five issues on appeal. First, he argues the District Court erroneously denied his Rule 29 motion for acquittal or, in the alternative, for a new trial. Second, he alleges the District Court abused its discretion by refusing to hold an evidentiary hearing regarding allegations that one juror considered extrajudicial information and that another juror misunderstood the burden of proof. Third, Flemming claims the District Court abused its discretion when it refused to allow him to introduce evidence of a document allegedly signed by John and acknowledging a debt to Flemming. Fourth, Flemming argues the District Court should have dismissed the indictment for failure to specify the "intangible" honest service that was part of the scheme to defraud. Finally, Flemming challenges the reasonableness of his sentence. We address each issue in turn.

*A.*

Flemming first challenges the sufficiency of the evidence supporting all counts of his conviction. Specifically, Flemming argues that Christopher's testimony does not

establish that he knew John requested expedited payments on his behalf or that he gave John money to improperly influence him to expedite payments. The District Court concluded there was "substantial evidence from which the jury could find guilt beyond a reasonable doubt on all counts." J.A. at 88. We agree with the District Court and will affirm the convictions.

Our review of Flemming's insufficiency of the evidence claim is "particularly deferential" to the jury's determination. *United States v. Peppers*, 302 F.3d 120, 125 (3d Cir. 2002) (internal quotation and citation omitted). We must sustain the jury's verdict "if there is substantial evidence, taking the view most favorable to the Government, to support it." *United States v. Voigt*, 89 F.3d 1050, 1080 (3d Cir. 1996) (internal quotation and citation omitted). That is, the jury's verdict must stand if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). "It is not for us to weigh the evidence or to determine the credibility of the witnesses." *Id.* (internal quotation and citation omitted). Overall, "a claim of insufficiency of the evidence places a very heavy burden on an appellant." *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990) (internal quotation and citation omitted).

To prove a conspiracy to defraud the United States in violation of 18 U.S.C. § 371, the government was required to establish: "(1) the existence of an agreement; (2) an overt act by one of the conspirators in furtherance of the objective; and (3) an intent on the part of the conspirators to agree as well as to defraud the United States." *United States v.*

6

*Gambone*, 314 F.3d 163, 167 (3d Cir. 2003) (citation omitted). The government may rely entirely on circumstantial evidence to establish a conspiracy. However, "the inferences drawn must have a logical and convincing connection to the facts established." *United States v. Carr*, 25 F.3d 1194, 1201 (3d Cir. 1994) (internal quotation and citation omitted). The superseding indictment described two ways in which Flemming conspired with John to "make as much money as possible from the Virgin Islands Government by corruptly securing payments" on the contract: (1) to secure payments that exceeded the average cost to repair the units; and (2) to expedite payments under the contract. J.A. at 13-14. The Government has conceded that it did not introduce evidence to support a conspiracy as to (1). However, we will uphold the conviction if the evidence was sufficient as to either of the alleged objects of the conspiracy. *Carr*, 25 F.3d at 1201-02.

It is undisputed that Flemming made numerous monetary payments to John throughout 1998 and 1999. Captain Parris testified that Flemming admitted to having an agreement with John whereby he would pay John $500 for each unit repaired under the contract. Although Flemming explained that the payments to John were a loan, it is for the jury to weigh the evidence and determine the credibility of witnesses. *Voigt*, 89 F.3d at 1080. The government also proved an overt act through Christopher, who testified that John paid her $250 to expedite payments to Flemming's company. Christopher also confirmed that payments to Flemming were in fact expedited ahead of payments to other vendors. Moreover, the government introduced copies of checks Flemming paid to John and a notebook detailing additional cash payments made to John. Based on the evidence

7

presented, the jury could logically infer that Flemming and John intended to work together to achieve the common goal of defrauding the VIHA by expediting payments to Flemming's company ahead of payments to other vendors.

Flemming was also convicted of wire fraud in violation of 18 U.S.C. § 1343, which provides, in relevant part: "Whoever, having devised . . . any scheme or artifice to defraud, . . . transmits . . . by means of wire . . . in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than five years, or both." Section 1346 defines the term "scheme or artifice to defraud" to include "a scheme or artifice to deprive another of the intangible right of honest services."[2] We have recognized that honest services fraud "typically occurs in two scenarios: (1) bribery, where a legislator was paid for a particular decision or action; or (2) failure to disclose a conflict of interest resulting in personal gain." *United States v. Antico*, 275 F.3d 245, 262 (3d Cir. 2001). To sustain Flemming's conviction for honest services fraud, the government was required prove "(1) [Flemming's] knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of the

---

[2]Congress enacted § 1346 in response to the Supreme Court's decision in *McNally v. United States*, 483 U.S. 350 (1987). In *McNally*, the Supreme Court held that the mail and wire fraud statutes were limited to the protection of property rights and did not reach schemes to defraud citizens of the intangible right to a public official's honest services. *United States v. Panarella*, 277 F.3d 678, 690 (3d Cir. 2002). Section 1346 "was enacted to overturn *McNally* and restore the evolution of mail and wire fraud to its pre-McNally status." *United States v. Antico*, 275 F.3d 245, 262 (3d Cir. 2001).

mails or interstate wire communications in furtherance of the scheme." *Id.* at 261.

As described above, a reasonable jury could infer from the established facts and circumstantial evidence that Flemming and John knowingly and willfully participated in a scheme to expedite VIHA payments to Flemming's company. The jury could also logically conclude that the money Flemming paid John was intended to influence John in this regard, thereby depriving the citizens of the Virgin Islands of the honest services of a VIHA employee. The government also elicited testimony establishing that the checks were processed in interstate commerce through electronic wires.

To sustain a conviction for program fraud in violation of 18 U.S.C. § 666(a)(2), the government was required to prove that Flemming "corruptly [gave] . . . anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business . . . of such organization, government, or agency involving anything of value of $5,000 or more . . . ."[3] As with the wire fraud conviction, the evidence is sufficient for a reasonable jury to find that Flemming corruptly gave John money to influence John to expedite payments to Flemming's company under the contract.

---

[3]Subsection (a) of the statute states that a violation occurs "if the circumstances described in subsection (b) of this section exist." Subsection (b) requires that the organization, government, or agency in question receive more than $10,000 in federal assistance in a one-year period. Testimony at trial established that VIHA received more than $10,000 in federal funding from the United States Department of Housing and Urban Development in 1998 and 1999. Accordingly, the government established that the condition in subsection (b) of 18 U.S.C. § 666 was satisfied.

9

Accordingly, we conclude that a rational trier of fact could find beyond a reasonable doubt that Flemming engaged in a conspiracy to expedite payments to his company, and that he committed wire fraud and program fraud in carrying out this scheme.

*B.*

Flemming next challenges the District Court's denial of his Rule 33 motion for a new trial.[4] Flemming bases this claim on an affidavit from his brother, Sinclair Flemming, in which Sinclair Flemming states that he spoke to two jurors after the guilty verdict was returned, and further attests to the following:

> [J]uror no. 141, indicated to me that she convicted Defendant on all counts because she has a sister who works with the Federal Government, and her sister told her that it is a violation of Federal Laws for anyone to give anything of value to an employee of a Government Agency which received Federal funds. . . . [Juror no. 141's] sister apparently provided her with the information during trial. . . .

> A second juror . . . juror no. 163 indicated that she and her fellow jurors determined that Defendant Flemming was guilty because he did not meet the burden of proof to convince them he was innocent.

J.A. at 68-69.

Federal Rule of Evidence 606(b) provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or

---

[4]Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."

indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

*See also Tanner v. United States*, 483 U.S. 107, 121 (1987) (explaining that Rule 606(b) codifies the common law no impeachment rule and the exception for extraneous influences). In general, "we do not permit jurors to impeach their own verdicts." *United States v. Lloyd*, 269 F.3d 228, 237 (3d Cir. 2001). This rule is intended to "promote finality of verdicts, encourage free deliberation among jurors, and maintain the integrity of the jury as a judicial decision-making body." *Id.* (internal quotation and citation omitted). However, because "[a] criminal defendant is entitled to a determination of his or her guilt by an unbiased jury based solely upon evidence properly admitted against him or her[,] . . . a court may inquire into the verdict if extraneous prejudicial information was improperly brought to the jury's attention or [if] any outside influence was improperly brought to bear upon any juror." *Id.* (internal quotations and citations omitted).

The District Court found that any inquiry into juror no. 163's alleged misunderstanding of the burden of proof was barred by Federal Rule of Evidence 606(b). We agree. As discussed above, Rule 606(b) does not permit a court to inquire into the validity of the jury's verdict absent an allegation related to extraneous prejudicial information or improper outside influences.

With respect to the claim that juror no. 141 was improperly influenced by extraneous information, the District Court declined to hold an evidentiary hearing because

11

it determined Flemming had not met his burden of showing substantial prejudice. Our review of the District Court's finding that extraneous information did not prejudice Flemming is for an abuse of discretion. *Lloyd*, 269 F.3d at 237 (citation omitted). We are mindful of the "considerable deference" appellate courts traditionally give to a district court's determination of "the prejudicial effect of extraneous information on a jury's verdict." *Id.* at 243.

A new trial should be granted where the defendant demonstrates that he likely suffered "'substantial prejudice' as a result of the jury's exposure to the extraneous information." *Id.* at 238 (citation omitted). "In examining for prejudice, we must conduct an objective analysis by considering the probable effect of the allegedly prejudicial information on a hypothetical average juror[,]" *id.* (internal quotation and citation omitted), and thus we do not consider "the subjective effect of such information on the particular jurors." *Id.* at 237 (internal quotation and citation omitted). We apply a presumption of prejudice only when the extraneous information "is of a considerably serious nature." *Id.* at 238. Several factors relevant to our determination include whether the extraneous information relates to an element of the case decided against the moving party, "the extent of the jury's exposure to the extraneous information," "the time at which the jury receives the extraneous information," and whether the district court properly instructed the jury to consider only evidence presented at trial. *Id.* at 239-40.

We agree with the District Court that Flemming failed to show that he likely suffered substantial prejudice as a result of the extraneous information provided to juror

12

no. 141. Sinclair Flemming's affidavit does not establish when juror no. 141 received the extraneous information, but merely speculates that juror no. 141 received it during the trial. Furthermore, it does not allege that juror no. 141 shared this information with any other member of the jury. Finally, the District Court properly instructed the jury, prior to deliberations, that "[a]nything you may have seen or heard outside the courtroom is not evidence in this case." J.A. at 198-99. It further explained that "[t]he evidence you are to consider in rendering a verdict in this case is the testimony of the witnesses, and the documents or exhibits that have been admitted into evidence." J.A. at 199.

Putting aside any subjective effect the extraneous information had on juror no. 141, as we must under Rule 606(b), we believe this information would not have had an impact on the hypothetical average juror's vote in Flemming's case. Accordingly, we conclude the District Court did not abuse its discretion in denying Flemming's Rule 33 motion. *Id.* at 243.

### C.

Flemming next asserts the District Court erred by refusing to admit evidence of a written statement, made and signed by John, which he claims was relevant to support his defense that the money he gave to John was a loan. Where it is based on a permissible interpretation of the Federal Rules of Evidence, we review the District Court's decision to admit or exclude evidence for abuse of discretion. *United States v. Sada*, 212 F.3d 210, 215 (3d Cir. 2000) (citation omitted).

Under Federal Rule of Evidence 802, hearsay is not admissible unless it falls

13

within a recognized exception. Hearsay is an out of court statement, either oral or written, offered to prove the truth of the matter asserted. Fed. R. Evid. 801(a), (c).

The statement at issue, which was signed only by co-defendant John, acknowledges that John borrowed money from Flemming and planned to pay the money back in the near future. John did not testify as a witness at Flemming's trial. Accordingly, the document is an out of court statement. Furthermore, as suggested by his brief, Flemming intended to introduce the written statement as exculpatory evidence to corroborate his defense that the payments he made to John were a loan. As such, he was attempting to offer it as evidence of the truth of the matter asserted in it, i.e., that he had a loan with John. Because the written statement is classic hearsay, and Flemming has pointed to no exception to the hearsay rule that would permit him to introduce it, the District Court did not abuse its discretion in excluding this evidence at trial.[5] *See Taylor*

---

[5]It appears that Flemming alternatively argues that the District Court's exclusion of the written statement deprived him of his constitutional right to present a complete defense, even if the statement was otherwise inadmissible on hearsay grounds. *See generally Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (recognizing that "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice"). We find no merit in this contention. To establish a constitutional violation in these circumstances, a defendant must show: (1) he was deprived of the opportunity to present evidence in his favor; (2) the excluded testimony would have been material and favorable to his defense; and (3) the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose. *Gov't of Virgin Islands v. Mills*, 956 F.2d 443, 446 (3d Cir. 1992). Even assuming the written statement was material and favorable to Flemming's defense, the District Court's ruling clearly was not arbitrary or disproportionate to any legitimate evidentiary or procedural purpose. *Cf. Chambers*, 410 U.S. at 302 (exclusion of hearsay statement improper where statement "bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the [hearsay] exception for declarations against

*v. Illinois*, 484 U.S. 400, 410-11 (1988) (holding that "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence").

*D.*

Next, Flemming disputes the sufficiency of the superseding indictment as to count one, conspiracy, and counts two through eighteen, charging him with wire fraud for theft of honest services. He alleges the indictment failed to plead sufficiently particular facts supporting the intangible property he deprived the Virgin Islands Housing Authority of in the wire fraud scheme, and that this failure also affects the conspiracy charge. We review the sufficiency of an indictment *de novo*. *United States v. Al Hedaithy*, 392 F.3d 580, 587 (3d Cir. 2004); *Virgin Islands v. Pemberton*, 813 F.2d 626, 631 (3d Cir. 1987).

In examining the sufficiency of a charging document, we must determine "whether the indictment or information contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet." *Pemberton*, 813 F.2d at 631 (internal quotations and citations omitted). Additionally, for charges of fraud or conspiracy, specific intent crimes, the indictment must charge "with particularity" the facts supporting the offense. *Al Hedaithy*, 392 F.3d at 587 (requiring proof of specific intent for both mail and wire fraud); *United States v. Applewhaite*, 195 F.3d 679, 684 (3d Cir. 1999) (requiring specific intent to commit unlawful act in

---

interest," even though it technically did not fall within the exception).

15

conspiracy charges); *Pemberton*, 813 F.2d at 631 (requiring pleading with particularity for specific intent crimes).

The District Court properly found that the superseding indictment was sufficient when it charged the disputed counts. Flemming's claim that the indictment did not properly identify the intangible services of John that were denied to the VIHA as a result of the scheme is wholly unsupported by a reading of the indictment. The description of the scheme in the wire fraud counts specifically states that the defendants' scheme involved "corruptly securing payment on a contract for public housing project repair work in exchange for reward payments." J.A. at 20. The indictment further specified that this scheme "[d]eprived the Virgin Islands government and its citizens of their right to the honest services of an agent of the Virgin Islands when WALTER JOHN, JR. . . . obtained an interest in GEORGE FLEMMING'S efforts to secure a payments [sic] on the VIHA housing repair contract . . . ." J.A. at 22. The indictment also delineates the operation of the scheme immediately prior to the charging paragraph for honest services wire fraud, stating that a revenue sharing arrangement existed and that Flemming paid John for "assistance" in securing payment on his government contract. J.A. at 21. The indictment supports the arrangement between John and Flemming with particular facts, such as the date and amount of checks and the substance of the government contract work in question.

Accordingly, the District Court correctly denied Flemming's motion to dismiss the superseding indictment.

16

*E.*

Finally, Flemming challenges the reasonableness of his sentence. Specifically, he asserts the District Court did not properly analyze the factors set forth in 18 U.S.C. § 3553(a) and did not provide sufficient reasons for his above-Guidelines sentence. The District Court calculated the advisory Guidelines range to be between 15 and 21 months' imprisonment, and it sentenced Flemming to 24 months, followed by three years of supervised release, a $15,000 fine, and a $3,200 special assessment.

In evaluating the reasonableness of a sentence, we determine whether: (1) the court gave "meaningful consideration" to the § 3553(a) factors and any meritorious grounds properly raised by the parties; and (2) whether those factors were "reasonably applied to the circumstances of the case." *Cooper*, 437 F.3d at 329-30. In conducting this review, we look to the entire sentencing transcript, and "we will not elevate form over substance." *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006). Furthermore, we apply a deferential standard, as "the trial court [is] in the best position to determine the appropriate sentence in light of the particular circumstances of the case." *Cooper*, 437 F.3d at 330. The party challenging the sentence bears the burden to show unreasonableness. *Id.* at 332.

An independent review of the record confirms the District Court's sentence was reasonable. At the sentencing hearing, the District Judge properly calculated the appropriate Guidelines range, acknowledged the Guidelines are advisory, stated he must take the § 3553(a) factors into account, and expressly listed those factors. He then

17

reviewed the circumstances of Flemming's case, noted the seriousness of the offenses, and commented on the impact those offenses had on the citizens of the Virgin Islands. Although it could have been more thorough, the District Judge provided a sufficient statement, on the record, for imposing the above-Guidelines sentence of 24 months' imprisonment:

> I must also fashion a sentence that is sufficient but not greater than necessary, and in doing so I must take into account the factors set forth under Title 18, United States Code, Section 3553(a). Those factors are as follows: The nature and circumstance of the offense and the history and characteristics of you the Defendant; the seriousness of the offense; the need to promote respect for the law; the need to provide a just punishment for the offense; the need to afford adequate deterrence to criminal conduct; the need to protect the public from further crimes of you the Defendant; the need to provide you the Defendant with any needed educational or vocational training, medical care, or other correctional treatment in the most effective manner and the kind of sentences available.

> Mr. Flemming, you have committed some very serious crimes. Paying money under the table to a government official is something that cannot be countenanced. You have attempted and did deprive the people of the Virgin Islands of the honest services of one of its public servants, that is, Walter John. Your crimes clearly caused the citizenry to lose confidence in the integrity and fairness of the Virgin Islands Housing Authority, to lose confidence in the contracting system, and lose confidence in vital services performed by the Virgin Islands Housing Authority.

> Under the circumstances of this matter to which I've given a lot of thought, I'm going to commit you into custody of the Attorney General of the United States for a period of imprisonment of 24 months. I do so because in my view that sentence reflects the seriousness of your offenses, will act as a deterrent to such criminal conduct, and will also promote respect for the law.

J.A. at 646. Accordingly, the sentence was reasonable.

*III.*

We have considered all other arguments made by the parties on appeal, and

18

conclude that no further discussion is necessary. For the foregoing reasons, we will affirm the conviction and sentence entered by the District Court.