

Villanova University School of Law Digital Repository

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-23-2002

# Valansi v. Atty Gen USA

Precedential or Non-Precedential:

Docket 0-2293

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Valansi v. Atty Gen USA" (2002). *2002 Decisions.* Paper 27.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/27

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 23, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 00-2293

ELANITH VALANSI,
        Petitioner

v.

JOHN ASHCROFT,* Attorney General
of the United States,
        Respondent

On Petition For Review of an Order of the
Board of Immigration Appeals
United States Immigration and Naturalization Service

Argued: April 6, 2001

Before: SCIRICA, AMBRO, and GIBSON,**
Circuit Judges

(Opinion Filed January 23, 2002)

        Thomas E. Moseley (Argued)
        Suite 2600
        One Gateway Center
        Newark, NJ 07102

Counsel for Appellant

_____

* Substituted pursuant to Rule 43(c) of the F.R.A.P.

** The Honorable John R. Gibson, Circuit Judge, United States Court of
Appeals for the Eighth Circuit, sitting by designation.

Michael P. Lindemann
Alison M. Igoe (Argued)
Matthew R. Hall
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

Counsel for Appellee

OPINION OF THE COURT

AMBRO, Circuit Judge

Petitioner Elanith Valansi seeks judicial review of a final order of removal entered by the Board of Immigration Appeals (the "BIA" or "Board") for the United States Immigration and Naturalization Service (the "INS" or "Government"). The Board ruled that the petitioner's conviction for embezzling, in violation of 18 U.S.C.S 656, in excess of $400,000 in cash and checks from her employer (the First Union National Bank) was an aggravated felony as defined in section 101(a)(43)(M)(i) of the Immigration and Nationality Act of 1952 (the "INA" or "Act") (codified as amended at 8 U.S.C. S 1101(a)(43)(M)(i)). It therefore ordered her removed to Israel pursuant to 8 U.S.C. S 1227(a)(2)(A)(iii). Valansi's petition asks us to vacate the Board's final order of removal because her conviction under 18 U.S.C. S 656 does not qualify as an aggravated felony authorizing her removal from the United States. For the reasons explained below, we grant the petition for review and vacate the Board's order.

I. Background Facts and Procedural History

Valansi was born in Israel in 1974. She first came to the United States with her parents and older sister only a month and a half after her birth, and has been a lawful permanent resident in this country since 1990. Valansi's family settled in Monmouth County, New Jersey, where she attended elementary and high school and received her high

2

school diploma. She later attended a local community college. Her father, mother, and sister are all lawful permanent residents. Her sister's son is a United States citizen, and she has two siblings from her father's prior marriage who are both United States citizens.

From 1992 to 1995, Valansi was employed as a bank teller in Tinton Falls, New Jersey. From 1995 to 1997, she was a bank teller with First Union National Bank ("First Union") in Eatontown, New Jersey. Prior to 1997, she had never been arrested and had no criminal record. However, on six separate occasions spanning four months in 1997, Valansi embezzled in the aggregate more than $400,000 in cash and checks entrusted to First Union. A federal grand jury returned an indictment charging that, "with intent to injure and defraud the Bank, [Valansi] knowingly and willfully embezzle[d] and purloine[d] . . . moneys, funds, credits, and assets belonging to the Bank and intrusted [sic] to her custody and care," in violation of 18 U.S.C. S 656.

On October 30, 1998, Valansi pled guilty to the six-count indictment in exchange for the Government's agreement not to prosecute her further for any charges that might arise from her embezzlement, and in exchange for a stipulation regarding the federal sentencing guidelines that would apply to her case. During the plea colloquy during which Valansi's plea was accepted by the Court, the Government set forth the following essential elements of the crime to which she agreed to plead guilty:

> First, that at the time of the offense charged, Valansi was an employee of First Union National Bank, which is a national bank.

> Second, that she wilfully embezzled money or credits of First Union, or money, funds or assets entrusted to the custody or care of First Union.

> Third, that the value of those moneys or assets was in excess of $1,000.

> And, lastly, that Valansi acted with the intent to "injure or defraud" the bank.

3

The Court asked Valansi a series of questions designed to determine whether her criminal conduct conformed to the elements of the offense. It confirmed that she was an employee of First Union and that she "deliberately" removed funds in the amounts charged within the indictment with the intent to "deprive" the bank of those funds. The Court concluded that her conduct violated the elements of the offense under 18 U.S.C. S 656 and accepted Valansi's guilty plea. On January 22, 1999, Valansi was sentenced under United States Sentencing Guideline S 2B1.1, the Sentencing Guideline for theft offenses, to six months imprisonment followed by five years supervised release, the first six months of which to be served at home under electronic monitoring. She was ordered to pay restitution in the amount of $32,260.22 for the cash amounts embezzled. 3

Valansi served her prison term. She sought employment in the prison education department and was hired to teach basic literacy and American Sign Language. In January 1999, Valansi became engaged to marry a United States citizen, and the couple planned a May 1999 wedding. On April 24, 1999, the INS served Valansi with a notice to appear for a removal proceeding charging her with removal for committing an aggravated felony as defined in 8 U.S.C. S 1101(a)(43)(M)(i). Valansi was taken into INS custody almost immediately after being released from prison. 4 She was later released in May 2000 to complete the house arrest portion of her sentence.

On December 7, 1999, an Immigration Judge held that Valansi was removable under 8 U.S.C. S 1227(a)(2)(A)(iii) as an alien who had been convicted of an aggravated felony. On July 20, 2000, the BIA affirmed. In doing so it rejected

_____

3. The restitution amount does not reflect the amounts embezzled through checks because the checks could not be negotiated without proper endorsements and were recovered when the thefts were discovered.

4. Valansi's brief describes inconsiderate treatment from INS agents when attending her father's funeral while in their custody. Although we believe that conduct was serious, and that it may have caused unnecessary emotional distress to Valansi, we do not repeat it at length here because it does not bear on our analysis of whether her conviction qualifies as an aggravated felony.

4

Valansi's argument that her conviction under 18 U.S.C. S 656 was not an aggravated felony because it was a theft offense with a term of imprisonment of less than one year. It concluded that Valansi's conviction under S 656 was properly considered an aggravated felony because it was an offense involving fraud or deceit (and not theft) that resulted in loss to the victim greater than $10,000.

Valansi filed this petition for review on August 7, 2000. The Government moved to dismiss her petition on September 11, 2000, for lack of subject matter jurisdiction, and Valansi filed an opposition to this motion on October 2, 2000. By order dated November 1, 2000, our Court referred this motion to a merits panel.[5] By letter dated October 20, 2000, Valansi's attorney notified this Court that she would become eligible for removal on November 7, 2000, but that he had not received notice from the INS expressing an intent to execute the removal order at that time. To preserve the status quo and allow us to make a decision on this case, we granted Valansi's motion for stay of removal.

II. Discussion

Valansi's petition for review is governed by 8 U.S.C. S 1252(a)(2)(C), which provides that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2)(A)(iii)." We have recently explained that this jurisdiction-stripping provision comes into play only when two facts exist:"(1) the petitioner is an alien (2) who is deportable by reason of having been convicted of one of the enumerated offenses." Drakes v. Zimski, 240 F.3d 246, 247 (3d Cir. 2001). In keeping with the views of several other circuit courts, we held that we have jurisdiction "to determine whether these jurisdictional facts are present." Id.; Tapia Garcia v. INS, 237 F.3d 1216, 1220-21 (10th Cir. 2001); Mahadeo v. Reno,

_____

5. On October 12, 2000, Valansi moved for summary reversal of the BIA's decision and for a stay of removal. The Government filed a response on November 13, 2000, and Valansi submitted a reply on November 29, 2000. This motion was also referred to the merits panel on January 3, 2001.

226 F.3d 3, 9 (1st Cir. 2000), cert. denied, 121 S. Ct. 2590 (2001); Bell v. Reno, 218 F.3d 86, 89-90 (2d Cir. 2000), cert. denied, 121 S. Ct. 784 (2001); Santos v. Reno, 228 F.3d 591, 597 n.11 (5th Cir. 2000); Flores-Miramontes v. INS, 212 F.3d 1133, 1135 (9th Cir. 2000); Lewis v. INS, 194 F.3d 539, 542 (4th Cir. 1999); Diakite v. INS , 179 F.3d 553, 554 (7th Cir. 1999) (per curiam).

In this case, Valansi does not dispute that she is an alien. Instead she argues that her conviction for embezzlement of bank funds under 18 U.S.C. S 656 does not qualify as an aggravated felony as defined in 8 U.S.C. S 1101(a)(43)(M)(i), and that she therefore cannot be deported pursuant to 8 U.S.C. S 1227(a)(2)(A)(iii). If she is right, judicial review is not precluded, and the removal order will be vacated for failing to allege a removable offense. If she is wrong, 8 U.S.C. S 1252(a)(2)(C) deprives us of jurisdiction to inquire any further into the merits, and the removal order will stand. Because we are determining a purely legal question, and one that governs our own jurisdiction, we review de novo whether the petitioner's conviction qualifies as an aggravated felony. See, e.g., Lopez-Elias v. Reno, 209 F.3d 788, 791 (5th Cir. 2000), cert. denied, 121 S. Ct. 757 (2001) ("Reviewing the matter de novo, we nevertheless conclude that we have no jurisdiction under IIRIRA [Illegal Immigration Reform and Immigrant Responsibility Act of 1996], because Lopez-Elias was convicted of a crime of violence . . . ."); Solorzano-Patlan v. INS, 207 F.3d 869, 872 (7th Cir. 2000) ("[B]oth our jurisdiction to hear this case and the merits of the appeal turn on the question of whether Solorzano-Patlan is an aggravated felon, a decision we review de novo."); Ye v. INS, 214 F.3d 1128, 1131 (9th Cir. 2000) ("This court reviews de novo the question of whether a particular offense constitutes an aggravated felony for which an alien is subject to removal.").

Despite our exercise of de novo review, we will give deference to the agency's interpretation of the aggravated felony definition if Congress's intent is unclear."We do not doubt that the principles of Chevron v. Natural Resources Defense Council, 467 U.S. 837 (1984) . . . apply in general to the statutory scheme set out in the INA." Drakes, 240

6

F.3d at 250 (citing INS v. Aguirre-Aguirre, 526 U.S. 415, 424-25 (1999)). The Aguirre-Aguirre Court explained that "the BIA should be accorded Chevron deference as it gives ambiguous statutory terms `concrete meaning through a process of case-by-case adjudication.' " 526 U.S. at 425. The courts of appeals have likewise employed Chevron when interpreting immigration statutes that ultimately determined their jurisdiction. See, e.g., Bell, 218 F.3d at 90 (analyzing under Chevron standard whether the Immigration Act of 1990 superseded the Anti-Drug Abuse Act of 1988 date restriction with regard to aggravated felonies); Lettman v. Reno, 207 F.3d 1368, 1370 (11th Cir. 2000) (same); Lewis, 194 F.3d at 544 (same); Maghsoudi v. INS, 181 F.3d 8, 14 (1st Cir. 1999) (according"due deference" to the BIA's interpretation of whether a crime involved "moral turpitude" within the meaning of 8 U.S.C. S 1227(a)(2)(A)(i)); Coronado-Durazo v. INS, 123 F.3d 1322, 1323-24 (9th Cir. 1997) (applying Chevron when deciding whether a conviction for solicitation under Ariz. Rev. Stat. S 13-1002 is a deportable offense within the meaning of 8 U.S.C. S 1251(a)(2)). But see Lopez-Elias , 209 F.3d at 791 ("Even assuming the ambiguity of the statutory terms of IIRIRA, however, the fact that courts defer to the INS's construction of its statutory powers of deportation does not mean that similar deference is warranted with respect to the enforcement of this court's jurisdictional limitations.").

Under Chevron, "[w]e only defer . . . to agency interpretations of statutes that, applying the normal `tools of statutory construction,' are ambiguous." INS v. St. Cyr, 121 S. Ct. 2271, 2290 n.45 (2001) (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 447-48 (1987)). In St. Cyr, the Supreme Court refused to defer to the BIA's interpretation of whether certain provisions of IIRIRA should be applied retroactively because "there is, for Chevron  purposes, no ambiguity in such a statute for an agency to resolve." Id. Prior to St. Cyr, courts of appeals agreed that deference to the BIA's interpretation of the Act is only appropriate when Congress's intent is unclear. See, e.g., Sandoval v. Reno, 166 F.3d 225, 240 (3d Cir. 1999) ("Assuming arguendo that Chevron does apply, it directs us to ascertain, by `employing traditional tools of statutory construction,' whether Congress has expressed `an intention on the precise

7

question at issue.' ") (quoting Chevron , 467 U.S. at 843 n.9); Bell, 218 F.3d at 90 ("If, by employing traditional tools of statutory construction, we determine that Congress's intent is clear, that is the end of the matter. However, if the statute is silent or ambiguous with respect to the specific issue, we then ask whether the agency's answer is based on a permissible construction of the statute.") (internal citations and quotation marks omitted); Lewis , 194 F.3d at 544 ("If we conclude that Congress has not directly addressed the question at issue in a statute or its intent is ambiguous, we must defer to the Board's interpretation of the statute provided it is not an unreasonable one.") (internal citations and quotation marks omitted). Thus, our task is to determine, using ordinary tools of statutory construction, whether Congress intended the definition of aggravated felony provided in 8 U.S.C. S 1101(a)(43)(M)(i) to include embezzlement of bank funds under 18 U.S.C. S 656.

"The first step in interpreting a statute is to determine `whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.' " Marshak v. Treadwell, 240 F.3d 184, 192 (3d Cir. 2001) (quoting Robinson v. Shell Oil Co. , 519 U.S. 337, 340 (1997)). When the statutory language has a clear meaning, we need not look further. Id.; see also In re Crammond, 23 I&N Dec. 9 (BIA 2001) (examining first the "terms of the statute itself " before turning to "traditional tools of statutory construction, such as the legislative history" to determine Congressional intent).

"The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Marshak , 240 F.3d at 192 (internal quotation marks omitted). In this case, the specific provision providing a definition of aggravated felony, 8 U.S.C. S 1101(a)(43)(M)(i), does not mention embezzlement. It provides that an aggravated felony includes "an offense that -- involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." Id. Valansi does not dispute that her conviction satisfies the $10,000 monetary requirement. Instead, she argues that

8

her conviction for embezzlement is not an offense that "involves fraud or deceit."

The BIA argues to the contrary. It has acknowledged that, because the term "fraud" is not defined in the INA, "it should be used in the commonly accepted legal sense, that is, as consisting of false representations of a material fact made with knowledge of [their] falsity and with intent to deceive the other party. The representation must be believed and acted upon by the party deceived to his disadvantage." Matter of GG, 7 I&N Dec. 161, 164 (BIA 1956); see also Agathos v. Starlite Motel, 977 F.2d 1500, 1508 (3d Cir. 1992) ("Under general principles of tort law, the elements of fraud are: (1) a material factual misrepresentation; (2) made with knowledge or belief of its falsity; (3) with the intention that the other party rely thereon; (4) resulting in justifiable reliance to that party to his detriment.") (citing Restatement (Second) of Torts SS 525–526 (1977)); Black's Law Dictionary 670 (7th ed. 1999) (defining fraud as "a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment" and explaining that "[f]raud is usu. a tort, but in some cases (esp. when the conduct is willful) it may be a crime.").

The term "deceit" also is not defined in the INA. However, it is commonly perceived as "[t]he act of intentionally giving a false impression," Black's Law Dictionary 413 (7th ed. 1999), or "the act or process of deceiving," which is in turn defined as "to cause to believe the false." Webster's Third New International Dictionary of the English Language Unabridged 584 (3d ed. 1993).

Turning back to 8 U.S.C. S 1101(a)(43)(M)(i), we determine whether the phrase "offense that –– involves fraud or deceit" has a plain meaning. The word"involves" means "to have within or as part of itself " or "to require as a necessary accompaniment." Webster's Third New International Dictionary at 1191. Thus, an offense that "involves fraud or deceit" is most naturally interpreted as an offense that includes fraud or deceit as a necessary component or element. It does not require, however, that the elements of the offense be coextensive with the crime of fraud.

9

An examination of the surrounding sections providing further examples of aggravated felonies supports this reading of the phrase "involves fraud or deceit." In S 1101(a)(43)(A) Congress defined the term aggravated felony to mean "murder, rape, or sexual abuse of a minor." In that case, it may have intended only those specific crimes, and not other offenses "involving" those crimes, to qualify as aggravated felonies. In S 1101(a)(43)(F) Congress defined an aggravated felony to mean "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." It thus limited the scope of the provision to apply only to crimes specified in a certain section within the United States Code. By analogy, had Congress intended S 1101(a)(43)(M)(i) to cover only convictions for the crime of fraud, it could have stated that an aggravated felony includes "the offense of fraud" or "the offense of fraud as defined in [a specific provision for the crime of fraud]." Thus, the use of the word"involves" expands the scope of S 1101(a)(43)(M)(i) to include offenses that have, at least as one element, fraud or deceit.

Using this framework, we examine whether a conviction under 18 U.S.C. S 656 qualifies as a crime"involving fraud or deceit." The statute provides that

> [w]hoever, being an officer, director, agent or employee of, or connected in any capacity with any . . . national bank . . . embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank . . . shall be [subject to fines provided in the statute . . .].

Id. The Government is required to establish five elements to obtain a conviction under this provision: (1) the defendant was an employee, (2) of a federally connected bank, (3) who took cash or other assets, (4) in the custody or care of the bank, (5) with the intent to injure or defraud the bank. See, e.g., United States v. Schoenhut, 576 F.2d 1010, 1024 (3d Cir. 1978) (citing United States v. Schmidt, 471 F.2d 385 (3d Cir. 1972)).

The predecessor of 18 U.S.C. S 656 explicitly enunciated the last element, the intention to injure or defraud the

10

bank, but the 1948 revision omitted this language. Nevertheless, Golden v. United States, 318 F.2d 357 (1st Cir. 1963), and Seals v. United States, 221 F.2d 243 (8th Cir. 1955), held that this revision did not change the meaning or substance of the existing law. In Schmidt we cited Golden and Seals for the proposition that an intent to injure or defraud, "while no longer explicitly required by the statute, is still considered an essential element of the crime." 471 F.2d at 386. Because the element is stated in the disjunctive, it may be shown either by intent to injure or intent to defraud. As Judge Posner wrote in United States v. Angelos, "Moreover, it is important to distinguish between intent to injure and intent to defraud; either will do, and they are not the same." 763 F.2d 859, 861 (7th Cir. 1985).

No doubt the crime of "embezzlement with intent to defraud" would qualify as an offense "involving fraud or deceit." The common meaning of the term "defraud" is "to take or withhold from (one) some possession, right, or interest by calculated misstatement or perversion of truth, trickery, or other deception." Webster's Third New International Dictionary at 593.

However, the mens rea element under S 656 may also be established by proof of an "intent to injure." The plain meaning of the term "injure" is "to do an injustice to," "to harm, impair or tarnish the standing of," or"to inflict material damage or loss on." Webster's Third New International Dictionary at 1164. Acting with the intent to injure does not require "false representations of a material fact made with knowledge of [their] falsity and with intent to deceive the other party," Matter of GG, 7 I&N Dec. at 164, or "a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment." Black's Law Dictionary 670 (7th ed. 1999). Nor does it require deception, which is defined as causing another to believe what is false. Thus, a conviction under S 656 establishing only that the defendant acted with an intent to injure his or her employer is not an offense that "involves fraud or deceit" under 8 U.S.C. S 1101(a)(43)(M)(i).

11

The INS maintains that a conviction for embezzlement under S 656 includes as a necessary element a finding that Valansi had the specific intent to defraud or deceive her employer. In its view, Valansi necessarily admitted that she committed a crime with intent to defraud her employer when she pled guilty.6

We disagree. The cases establish that a conviction may be established under 18 U.S.C. S 656 by proving that the defendant acted with either an intent to injure or an intent to defraud. See United States v. Krepps, 605 F.2d 101, 104 (3d Cir. 1979); Schoenhut, 576 F.2d at 1024; Schmidt, 471 F.2d at 386; United States v. Moraites, 456 F.2d 435, 441 n.9 (3d Cir. 1972)). The Government's isolated citation to United States v. Thomas, 610 F.2d 1166, 1174 (3d Cir. 1979), does not persuade us that a conviction under the statute necessarily requires an intent to defraud. Although Thomas listed as a basic element of the crime that "the defendant must have acted with intent to defraud the bank," it cited to Schoenhut, which, as noted above, held that a conviction may be obtained by proving either an intent to injure or an intent to defraud. We do not believe that Thomas intended to change the landscape of the law.

Consequently, some but not all convictions under 18 U.S.C. S 656 qualify as aggravated felonies under 8 U.S.C. S 1101(a)(43)(M)(i). A conviction establishing that the defendant acted with the intent to defraud his or her employer qualifies as an offense that involves fraud or deceit, and therefore as an aggravated felony. A conviction

_____

6. Our dissenting colleague agrees, citing Gov't of the V.I. v. Moolenaar, 133 F.3d 246, 250 (3d Cir. 1998), for the proposition that embezzlement "necessarily" involves deception. In that case we held an information to be sufficient even though it used the term "theft" rather than the statutory term "larceny." The thrust of our analysis was that the word "theft" may be taken to mean "breaking and entering," in contrast with "[f]raud and embezzlement," which "necessarily involve securing possession of another's property by deception." Id. This brief characterization of the crimes of "fraud and embezzlement" does not outweigh case law establishing that intent to injure alone may suffice for guilt under 18 U.S.C. S 656, particularly when linking "embezzlement and fraud" renders ambiguous whether "embezzlement" taken alone necessarily involves deception.

12

establishing that the defendant acted only with an intent to injure his or her employer does not.7

Taking a position directly opposite the Government's, Valansi argues that Congress intended convictions under 18 U.S.C. S 656 to qualify as aggravated felonies only when they meet the requirements of S 1101(a)(43)(G) rather than S 1101(a)(43)(M)(i). Section 1101(a)(43)(G) defines an aggravated felony as "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year." Because Valansi's conviction resulted in a term of imprisonment of less than one year, she maintains that it should not be considered an aggravated felony.

Valansi's argument relies upon background law with which Congress may be presumed to be familiar. See Cannon v. Univ. of Chicago, 441 U.S. 677, 699 (1979); Matter of Gomez-Giraldo, 20 I&N Dec. 957, 964 n.3 (BIA 1995) (Congress is "presumed to be cognizant of existing law pertinent to the legislation it enacts."). She directs our attention principally to three sources of law to assist in determining Congress's intent -- the federal criminal statutes, the Sentencing Guidelines, and the Model Penal Code.

_____

7. In this respect, our conclusion is different from that of the Eleventh Circuit. In Moore v. Ashcroft, 251 F.3d 919 (11th Cir. 2001), that Court acknowledged that "to establish the offense of misapplication of bank funds under 18 U.S.C. S 656, the government must prove as an element of the offense that the accused `acted with intent to injure or defraud the bank.' " Id. at 923. It then observed that "the `intent to injure or defraud' element of the offense is established by proof that the defendant knowingly participated in a deceptive or fraudulent transaction." Id. It therefore concluded that "the crime of misapplication of bank funds under 18 U.S.C. S 656 necessarily involves fraud or deceit and is appropriately considered an aggravated felony under INA S 101(a)(43)(M)(i), 8 U.S.C. S 1101(a)(43)(M)(i)." Id. We agree that the Government may establish that the accused acted with "intent to injure or defraud" by offering proof that he or she "knowingly participated in a deceptive or fraudulent transaction." However, we also believe that element could be satisfied by proof that the defendant acted with merely an intent to injure his or her employer. Under the latter circumstance, a conviction under 18 U.S.C. S 656 does not, in our view, necessarily involve fraud. That depends on how the conviction under S 656 unfolds.

13

Valansi points out that, under federal criminal statutes, embezzlement of bank funds is an offense under 18 U.S.C. S 656, whereas bank fraud is a separate offense under 18 U.S.C. S 1344. Moreover, embezzlement underS 656 is grouped together with theft offenses in Chapter 31 of Title 18, whereas fraud offenses are grouped in Chapters 47 and 63 of that Title. She also directs our attention to precedent stating that the term "theft" was intended to encompass all forms of stealing, including embezzlement, under the federal criminal statutes. See United States v. Turley, 352 U.S. 407, 412-13 & n.8, 415 n.14 (1957); United States v. Schneider, 14 F.3d 876, 880-81 (3d Cir. 1994); United States v. Maloney, 607 F.2d 222, 230-31 (9th Cir. 1979); United States v. Henry, 447 F.2d 283, 285 (3d Cir. 1971). She argues that we may presume that Congress was aware of these classifications and likewise intended that embezzlement be treated as a theft offense for purposes of the aggravated felony definition rather than an offense involving fraud or deceit.

Valansi also urges us to take notice of the distinction between theft offenses and fraud offenses in the U.S. Sentencing Guidelines Manual. U.S.S.G. S 2B1.1 creates a distinct Guideline for theft offenses, including embezzlement under 18 U.S.C. S 656, whereas U.S.S.G. S 2F1.1 creates a separate Sentencing Guideline for fraud and deceit offenses that does not include embezzlement under S 656. She urges us to compare the commentary to U.S.S.G. S 2B1.1, identifying that Guideline's applicability to convictions under 18 U.S.C. S 656, with the commentary to U.S.S.G. S 2F1.1, which does not list 18 U.S.C. S 656 among the convictions to which that Guideline applies. Consistent with this distinction, Valansi was sentenced under U.S.S.G. S 2B1.1, the Guideline for theft offenses, not fraud offenses. She argues that because the definition of aggravated felony under S 1101(a)(43) adopted the same categories of offenses that are found in the Guidelines, a conviction for embezzlement under 18 U.S.C. S 656 should be treated as a theft offense under S 1101(a)(43)(G) rather than an offense involving fraud and deceit under S 1101(a)(43)(M)(i).

Finally, Valansi argues that the treatment of embezzlement as a theft rather than fraud offense in the

14

Model Penal Code constitutes background law that we can presume Congress intended to parallel. She directs our attention to the fact that the Model Penal Code consolidates all stealing offenses, including embezzlement, under "theft," and places theft offenses in a section separate from fraud offenses. Compare Model Penal Code S 223 with S 224.

We do not dispute that courts may look to these sources when attempting to divine Congress's intent when passing the INA. Indeed, the BIA appears to have done so on several occasions when interpreting whether various criminal convictions may be classified as aggravated felonies in S 1101(a)(43). See, e.g., In re Espinoza, Int. Dec. 3402, 1999 WL 378088 (BIA 1999) (en banc) (examining classifications under federal statutes and Sentencing Guidelines when determining whether misprision of felony constitutes an offense relating to the obstruction of justice under S 1101(a)(43)(S)); In re Perez, Int. Dec. 3432, 2000 WL 726849 (BIA 2000) (en banc) (relying on Model Penal Code definition of burglary when determining whether breaking into a vehicle qualifies as an aggravated felony under the INA); In re VZS, Int. Dec. 3434, 2000 WL 1058931 (BIA 2000) (holding that a conviction under Model Penal Code S 223.2, which includes embezzlement, constitutes a theft offense under S 1101(a)(43)(G));8  In re Bahta, Int. Dec. 3437, 2000 WL 1470462 (BIA 2000) (relying on Model Penal Code definition of theft offense when determining whether conviction for attempted possession of stolen property was an attempted theft offense under S 1101(a)(43)(G)).

However, Valansi's argument suffers from a defect similar to that of the INS: it classifies convictions under 18 U.S.C. S 656 in an all-or-nothing manner. Valansi urges us to conclude that every conviction under 18 U.S.C. S 656

_____

8. Valansi maintains that In re VZS is binding precedent that required the BIA to classify her conviction as a theft offense rather than an offense involving fraud or deceit. We disagree. The fact that the BIA classified embezzlement as defined in the Model Penal Code as a theft offense under S 1101(a)(43)(G) does not mean that it could not also classify it as an offense involving fraud or deceit under S 1101(a)(43)(M)(i). Moreover, a conviction under 18 U.S.C. S 656 may be different from embezzlement under the Model Penal Code if the former includes an element of fraud or deceit that the latter does not.

15

should be treated as a theft offense for purposes of the aggravated felony definition because in other areas of the law Congress has chosen to align embezzlement offenses more closely with the crime of theft than with the crime of fraud. However, as we have explained above, the scope of the aggravated felony definition in S 1101(a)(43)(M)(i) is not coextensive with the crime of fraud. Congress's placement of the crime of embezzlement in the same Title of the United States Code as theft offenses, and treatment of sentencing for embezzlement offenses like sentencing for theft offenses, does not compel us to conclude that Congress intended to exclude the possibility of fraud within a conviction for embezzlement under 18 U.S.C. S 656. An analysis of the plain meaning of the statute suggests that embezzlement with intent to defraud would qualify as an offense that "involves fraud or deceit." When the statutory language has a clear meaning, we need not look further. Marshak, 240 F.3d at 192.9

Having determined the plain meaning of 8 U.S.C. S 1101(a)(43)(M)(i), we turn our attention to Valansi's specific case. We have cautioned that where "a criminal statute on its face fits the INA's deportability classification . . .[,] [t]o go beyond the offense as charged and scrutinize

_____

9. We pause to address Valansi's argument that the "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien," Cardoza-Fonseca, 480 U.S. at 449, requires that her conviction under 18 U.S.C. S 656 be treated as a theft offense rather than an offense involving fraud or deceit. This rule of construction (which Valansi refers to as the "rule of lenity," a term traditionally reserved for the criminal, not immigration, context) may be applied as a canon of last resort to determine the intent of Congress on an ambiguous issue. See id.; Marincas v. Lewis, 92 F.3d 195, 200 & n.6 (3d Cir. 1996); In re Crammond, 23 I&N Dec. 9 (BIA 2001). However, it need not be applied when the intent of Congress is already clear based on an analysis of the plain meaning of the statute. See Cardoza-Fonseca, 480 U.S. at 449; Marincas, 92 F.3d at 200. After analyzing the text of S 1101(a)(43)(M)(i), we believe there is no ambiguity to resolve because the plain meaning of the section is evident: it includes offenses that have fraud or deceit as an element. A conviction under 18 U.S.C. S 656 qualifies as an offense that has fraud or deceit as an element if there was a finding that the embezzlement was committed with an intent to defraud.

16

the underlying facts would change our inquiry from a jurisdictional one into a full consideration of the merits. Such an approach would fly in the face of the jurisdiction limiting language of IIRIRA." Drakes, 240 F.3d at 247–48. However, in this case we have determined that the criminal statute does not fit squarely within the INA's deportability classification because some, but not all, of the convictions under 18 U.S.C. S 656 qualify as offenses involving fraud or deceit. Because we are unable to determine from the face of the statute whether Valansi's conviction is among those that qualify as an aggravated felony, we must take the additional step of examining the underlying facts to determine whether Valansi pled guilty to an offense involving fraud or deceit.

A federal grand jury issued an indictment against Valansi charging that, "with intent to injure and defraud the Bank, [she] knowingly and willfully embezzle[d] and purloine[d] . . . moneys, funds, credits, and assets belong to the Bank and intrusted [sic] to her custody and care," in violation of 18 U.S.C. S 656. Although the Government urges us to conclude based upon the indictment that Valansi pled guilty to the intent to injure and defraud the bank, we hesitate to do so. While Valansi pled guilty to the indictment, her specific statements during the colloquy clarified what that plea entailed. "To comport with the Fifth Amendment, a defendant's plea of guilty must be voluntary and intelligent." Parry v. Rosemeyer, 64 F.3d 110, 113 (3d Cir. 1995); accord United States v. Salmon, 944 F.2d 1106, 1130 (3d Cir. 1991). The court is required to ensure that the defendant understands the nature of the charge before accepting his or her guilty plea as voluntary and intelligent. See Fed. R. Crim. P. 11(c). We therefore decline to limit our inquiry to the charge as stated in the indictment. We instead examine the entire context of Valansi's conviction, including not only the offense as charged in the indictment, but also as explained to her and confirmed by the District Court during the plea colloquy.

When the District Court asked the Government to read the elements of Valansi's crime into the record during the plea colloquy, the Government included as a necessary element that Valansi "acted with the intent to injure or

17

defraud the bank." The District Court then asked a series of questions with the goal of confirming that Valansi's conduct conformed to the elements charged. Valansi's responses demonstrate the intent to injure her employer by depriving it of its property. But never do they demonstrate clearly that Valansi's specific intent was to defraud the bank.

The Court first established that Valansi was an employee of First Union, and that she was "responsible, along with others, for processing night deposit bags which had been left by customers in the night deposit drop at the bank." Valansi agreed that this was correct. The Court then asked whether she "removed each of the [night deposit] bags from the bank deliberately," and whether she took the "batch of checks from the bank deliberately and knowing that it was wrong to do so." It asked Valansi whether she "intend[ed] in each case to deprive the bank of the cash and checks contain[ed] in the bags," and whether she "intend[ed] to deprive the bank of the checks contained in that batch knowing that they had not yet been fully processed." Valansi answered yes to each of these questions.

The Court then asked the following question: "Ms. Valansi, you have admitted here today that you did not intend to return those checks back from your apartment to the bank, that you intended to deprive the bank of that property, is that correct?" Valansi answered "No, it's not." The following dialogue between her counsel (Mr. Pascarella), the prosecutor (Mr. Weissman), the Court, and Valansi then ensued:

> MR. PASCARELLA: There was discussion between myself and Mr. Weissman with reference to the checks, and the admission was that she in fact took the checks, deprived the bank, sustaining a loss, they had not been fully processed.
>
> The question posed [is] whether or not she deliberately took those checks in depriving the bank. I don't know if Ms. Valansi is prepared to actually state that up until the time she gave the statement to Detective Cleary she did not intend to actually return the checks, because, quite frankly, at the time of

18

sentence your Honor will hear certain remarks by myself regarding the fact that the checks were valueless to her. They only signified signatures on a piece of paper and they were worth maybe the amount of two cents per piece of paper.

THE COURT: Let's talk about what the plea today is to and what the admission was, because Question 13 on Schedule A, and I will refer to it, it says "Did you intend to deprive the bank of the checks contained in that batch, knowing that they had not been fully processed?"

MR. PASCARELLA: What I think the answer to the question is, at the time she actually took the checks she committed a crime because she intended to deprive the bank of those checks knowing that they had not been fully processed.

There came a point in time when Ms. Valansi recognized two things: One, they were useless to her, and two, they knew they were gone and that she had intended to return them.

The crime had been complete. We are not talking about a crime that had not been completed at this time.

If the question were posed in that fashion to Miss Valansi, she would acknowledge that number 13 is accurate.

Is that correct Ms. Valansi?

MS. VALANSI: Yes.

MR. WEISSMAN: I agree with that analysis.

THE COURT: What everybody is telling me is . . .[t]he taking meant an intent to deprive.

MR. PASCARALLA: That's correct.

THE COURT: That's what Miss Valansi is admitting to?

MR. PASCARELLA: That's correct.

BY THE COURT:

19

Q Is that correct, Ms. Valansi?

A Yes.

Q You are saying it is, yes, I took it -- I took them, I intended to deprive the bank of them, but I'm not going to say that I also never intended to return them. Is that fair to say?

A Correct.

Q Is there anything else that you wish to add in terms of my understanding of what you're admitting to on the issue of checks?

A No, ma'am.

After confirming Valansi's intent to deprive the bank of its property, the Court abruptly switched to the general charges in the indictment which, as noted above, listed as an element of her crime the intent to "injure and defraud."

Q In terms of all of the charges in the indictment, and if you wish to review them one more time before you answer, or if you can answer directly, how do you plead to all the charges in the indictment, guilty or not guilty?

A Guilty.

THE COURT: I find that in this case that Ms. Valansi is fully competent and capable of entering an informed plea, that she's aware of the nature of the charges and the consequences of the plea, and entering the plea of guilty is knowingly and voluntarily done. I accept Ms. Valansi's plea and she is now adjudged guilty of that offense.

When reviewing this plea colloquy, we are faced with a dilemma. On one hand, the plea colloquy viewed in a general sense contains a plea of guilt to the charges of the indictment, which contained the phrase "injure and defraud." On the other hand, the District Court and the Government failed to establish throughout the plea colloquy whether Valansi was admitting that she had acted with the intent to defraud her employer. The Court repeatedly asked whether Valansi had the intent to "deprive" the bank of the

20

checks, to which she responded affirmatively. The meaning of "deprive" is "to take something away from." Webster's Third New International Dictionary at 606; accord Black's Law Dictionary at 453 (defining deprivation as an"act of taking away."). That word connotes an injury to the bank, but nothing of an intent to defraud, which means"to cause injury or loss to (a person) by deceit," Black's Law Dictionary at 434, or "to take or withhold . . . by calculated misstatement . . . or other deception." Webster's Third New International Dictionary at 593. But the District Court and the Government failed to establish that Valansi deceived the bank (i.e., by causing it to believe what is false) or acted fraudulently (i.e., by making a knowing misrepresentation of the truth or concealment of a material fact to induce the bank to act to its detriment).10

In this case, Valansi accepted guilt for theft and an intent to injure, but did not clearly accept guilt as to any fraudulent intent. Several times during the sentencing the Judge referred to Valansi's act as a "theft." The Court also stated that Valansi admitted to the specific acts that she committed that made her criminally responsible. In imposing sentence the Court referred to the money Valansi had taken, rather than a fraud the Government now alleges she had committed.

In this context, we cannot conclude, after scrutinizing the

_____

10. We recognize that it is common practice for United States Attorneys' Offices to pursue a strategy of "plead in the conjunctive, but instruct in the disjunctive" in order to "avoid uncertainty." Dep't of Justice Criminal
Resource Manual S 227. This tactic relies on the fact that

> [w]hen a statute specifies several alternative ways in which an
> offense may be committed, the indictment may allege the several
> ways in the conjunctive, and this fact neither renders the indictment
> bad for duplicity nor precludes a conviction if only one of the several
> allegations linked in the conjunctive in the indictment is proven.

Id., citing United States v. McCann, 465 F.2d 147, 162 (5th Cir. 1972). The use of the conjunctive in the indictment is"to avoid uncertainty" only; just as the Government may obtain a conviction if "only one of the several allegations linked in the conjunctive in the indictment is proven,"
so may a defendant plead guilty to only one of the allegations required to prove an element of her crime.

21

entire plea colloquy and record, that Valansi knowingly pled guilty to embezzlement with the specific intent to defraud. We simply do not know and may not speculate (though indeed we are skeptical about) whether Valansi would have accepted that her conduct amounted to an intent to defraud rather than to injure her employer. This skepticism is fed by what we do know: Valansi, advised by experienced immigration counsel, wanted strongly to avoid subjecting herself to deportation as a result of her plea. Not conceding this alternative element of embezzlement allowed her both a way to plead affirmatively to the crime and to offer an argument to elude deportation.

The Supreme Court has recently explained that "[p]lea agreements involve a quid pro quo between a criminal defendant and the government, . . . There is little doubt that . . . alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions." St. Cyr , 121 S. Ct. at 2291. The plea colloquy in this case states explicitly that "to the extent that there [was] any immigration or deportation issue, [Valansi was] apprised of the consequences of the plea as they may affect her status." In fact she retained separate counsel to advise her on the immigration consequences of the guilty plea. We believe that Valansi would have avoided pleading guilty to embezzlement with the specific intent to defraud and therefore cannot conclude that she pled guilty to"an offense that [ ] involves fraud or deceit." 8 U.S.C. S 1101(a)(43)(M)(i).

III. Conclusion

The plain meaning of S 1101(a)(43)(M)(i) defines an aggravated felony as an offense that has fraud or deceit as at least one required element. Some but not all convictions under 18 U.S.C. S 656 qualify as an aggravated felony under that definition: a conviction for embezzlement with specific intent to defraud qualifies as an offense involving fraud or deceit, and thus an aggravated felony; a conviction with only the specific intent to injure does not.

In Valansi's case, the specific intent to defraud was not established. It appears that Valansi was counseled to avoid

admitting to that intent, and the plea colloquy fails to pin
down the mens rea element sufficiently for us to conclude
that Valansi acted with the intent to defraud rather than to
injure her employer. The Government had ample
opportunity during the plea colloquy to explore the fraud or
deceit element, but made no effort to do so. In light of this
failure to make its case, particularly in a situation where it
must have realized that little things mean a lot, we will
grant Valansi's petition for review and vacate the final order
of removal for failure to establish that she was convicted of
an aggravated felony.

23

SCIRICA, Circuit Judge, dissenting.

At her guilty plea to embezzlement (18 U.S.C S 656), Valansi's counsel engaged in a clever bit of lawyering that was not picked up on by the government or the District Judge. As a consequence, the majority holds that although pleading guilty to embezzlement, Valansi never pled guilty to a crime involving fraud or deceit. Because I believe the majority mistakenly defines the crime of embezzlement under 18 U.S.C. S 656, I respectfully dissent.

I.

Valansi embezzled in the aggregate more than $400,000 in cash and checks entrusted to First Union National Bank on six separate occasions spanning four months in 1997.1 She pled guilty to six counts of embezzlement under 18 U.S.C. S 656.2 As a lawful permanent resident, Valansi is removable if her conviction qualifies as an aggravated felony under 8 U.S.C. S 1101(a)(43)(M)(i). See 8 U.S.C. S 1227(a)(2)(A)(iii).

The critical issue on appeal is whether a conviction for embezzlement under 18 U.S.C. S 656 constitutes an aggravated felony, defined in 8 U.S.C. S 1101(a)(43)(M)(i) as "an offense that -- involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." Because Valansi pled guilty to embezzling more than $10,000, the sole

_____

1. Valansi's indictment was based on the following criminal conduct: On April 30, 1997, Valansi embezzled $5,084.99 in cash and checks; on May 27, 1997, Valansi embezzled $11,287.86 in cash and checks; on June 7, 1997, Valansi embezzled $3,904.22 in cash and checks; on June 16, 1997, Valansi embezzled $8,239.05 in cash and checks; on August 4, 1997, Valansi embezzled $14,003.34 in cash and checks; on August 12, 1997, Valansi embezzled $370,674.69 in cash and checks entrusted to the care of First Union National Bank.

2. Valansi was charged with six counts of embezzlement in the indictment. Each count charged her with "knowingly and wilfully" embezzling deposits "intrusted to her custody and care." Valansi pled guilty to each count.

24

question is whether embezzlement is an offense that "involves fraud or deceit."3

18 U.S.C. S 656 provides, in part:

> Whoever, being an officer, director, agent or employee of, or connected in any capacity with any . . . national bank . . . embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank . . . shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

The statute does not define "embezzle." Therefore, we must resort to its settled meaning. In Morissette v. United States, 342 U.S. 246 (1952), the Supreme Court held:

> [W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them.

Id. at 263; see also Standard Oil Co. of N.J. v. United States, 221 U.S. 1, 59 (1911) ("[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense unless the context compels to the contrary.").4

_____

3. I agree with the majority that "the use of the word `involves' expands the scope of S 1101(a)(43)(M)(i) to include offenses that have, at least as one element, fraud or deceit" and that the provision does not require "that the elements of the offense involving `fraud or deceit' be coextensive with the crime of fraud." Supra at 9.

4. Similarly, "where Congress uses a common law term in a federal criminal statute, absent a new instruction defining it, Congress is presumed to adopt the term's widely accepted common law meaning." United States v. Cicco, 10 F.3d 980, 984 (3d Cir. 1993) (citing Morissette, 342 U.S. at 263); United States v. Nedley, 255 F.2d 350, 357 (3d Cir. 1958)).

The term "embezzlement" has been defined consistently by the Supreme Court for more than 100 years. In 1887, the Supreme Court said embezzlement had a "settled technical meaning."5 United States v. Northway, 120 U.S. 327, 334 (1887). In 1895, the Supreme Court held "[e]mbezzlement is the fraudulent appropriation of property by a person to whom such property has been intrusted, or into whose hands it has lawfully come." Moore v. United States, 160 U.S. 268, 269 (1895); see also United States v. Petti, 459 F.2d 294, 295 (3d Cir. 1972).6 In 1902, the Supreme Court declared "the word `embezzled' itself implies fraudulent conduct on the part of the person receiving the money. . . . Indeed, it is impossible for a person to embezzle the money of another without committing a fraud upon him." Grin v. Shine, 187 U.S. 181, 189 (1902).

Later cases have articulated that the act of embezzlement violates a relationship of trust and confidence."In embezzlement, breach of fiduciary duty is an inherent element of the crime." United States v. Maurello, 76 F.3d 1304, 1310 (3d Cir. 1996); see also United States v. Sayklay, 542 F.2d 942, 944 (5th Cir. 1976) ("The essence of embezzlement lies in breach of a fiduciary relationship deriving from the entrustment of money."). In order to be convicted of embezzlement, the accused must be entrusted with another's money or property or have lawful possession by virtue of some office, employment, or position of trust

_____

5. "By the late 18th century, courts were less willing to expand common-law definitions. Thus, when a bank clerk retained money given to him by a customer rather than depositing it in the bank, he was not guilty of larceny, for the bank had not been in possession of the money. Stautory crimes such as embezzlement and obtaining property by false pretenses . . . were created to fill this gap." Bell v. United States, 462 U.S. 356, 359 (1983) (citations omitted). See 2 W. LaFave & A. Scott, Substantive Criminal Law S 8.6 at 369 (1986) ("[E]mbezzlement . . . [was a] crime created by the legislature for the specific purpose of plugging loopholes left by the narrowness of the crime of larceny.").

6. See Black's Law Dictionary 522 (6th ed. 1990) (Embezzlement is defined as "the fraudulent appropriation of property by one lawfully entrusted with its possession."); 2 W. LaFave & A. Scott, Substantive Criminal Law S 8.6 at 368 (1986) (Embezzlement is defined as: "(1) the fraudulent (2) conversion of (3) the property (4) of another (5) by one who is already in lawful possession of it.").

before converting it.7 The Court of Appeals for the First Circuit notes:

> The notion of "fraudulent conversion," at the heart of embezzlement, may sound obscure, but, in fact, it is not. It essentially refers to, say, a bank teller, trustee, or guardian using money entrusted to him by another person for his own purposes or benefit and in a way that he knows the "entruster" did not intend or authorize.

United States v. Young, 955 F.2d 99, 102 (1st Cir. 1992).

II.

Valansi pled guilty to "knowingly and willfully" embezzling bank deposits. Despite the settled definition of "embezzlement," the majority declines to apply that definition to Valansi's conduct and guilty plea. Nor does it address her position of trust as an employee,8 or the breach of her fiduciary duties to the bank. As a result, I believe the majority misinterprets the elements of embezzlement under 18 U.S.C. S 656.

A.

As a bank teller for First Union National Bank, Valansi was in a fiduciary relationship.

_____

7. "The crime of embezzlement builds on the concept of conversion, but adds two further elements. First the embezzled property must have been in the lawful possession of the defendant at the time of its appropriation.
Second, embezzlement requires knowledge that the appropriation is contrary to the wishes of the owner of the property." United States v. Stockton, 788 F.2d 210, 216–17 (4th Cir. 1986) (citations omitted).

8. "Fraud inherently involves some exploitation of trust." United States v.
Iannone, 184 F.3d 214, 231 (3d. Cir. 1999) (Becker, C.J., concurring) (citing United States v. Koehn, 74 F.3d 199, 201 (10th Cir. 1996) ("In every successful fraud the defendant will have created confidence and trust in the victim . . . ."); United States v. Mullens, 65 F.3d 1560, 1567
(11th Cir. 1995) ("[T]here is a component of misplaced trust inherent in the concept of fraud . . . ."); United States v. Hathcoat, 30 F.3d 913, 915
(7th Cir. 1994) ("By its definition, embezzlement requires a finding of a breach of trust.")).

27

> The essence of a fiduciary relationship is that the fiduciary agrees to act as his principal's alter ego. . . . Hence the principal is not armed with the usual wariness that one has in dealing with strangers; he trusts the fiduciary to deal with him as frankly as he would deal with himself--he has bought candor.

United States v. Dial, 757 F.2d 163, 168 (7th Cir. 1985).

On six separate occasions spanning four months, Valansi appropriated checks and cash entrusted to her for deposit. Under any definition, this breach of her fiduciary duties involved fraud and deceit.9 By pleading guilty to "knowingly" embezzling the deposits "intrusted to her care," Valansi demonstrated the requisite intent for "fraudulent conversion."10 These actions were paradigmatic examples of embezzlement. As the Court of Appeals for the First Circuit said:

> An embezzler, like a thief or a swindler, may commit the crime in any of a myriad of different ways. But, in each instance, the embezzler will have acted for his own purposes and contrary to authorization. He will have "fraudulently converted" property entrusted to him by another. (citations omitted).

Young, 955 F.2d at 103.

A crime involving fraud or deceit qualifies as an

---

9. "Fraud in the common law sense of deceit is committed by deliberately misleading another by words, by acts, or, in some instances -- notably where there is a fiduciary relationship, which creates a duty to disclose all material facts -- by silence." Dial, 757 F.2d 163.

10. One basic source says "the mental state required for embezzlement generally appears in the statutes in the form of the adverb `fraudulently' modifying the verb `converts.' (If the statute should instead punish one who `embezzles,' it would not signify anything different, for `embezzles' means `fraudulently converts.')" 2 W. LaFave & A. Scott, Substantive Criminal Law S 8.6 at 379 (1986). Another source defines "fraudulent conversion" as "[r]eceiving into possession money or property of another and fraudulently withholding, converting, or applying the same to or for one's own use and benefit, or to [the] use and benefit of any person other than the one to whom the money or property belongs." Black's Law Dictionary 662 (6th ed. 1990).

28

aggravated felony.11 Independent of the fraud analysis, Valansi's conduct also constituted a crime involving deceit.12 We have stated that "[f]raud and embezzlement necessarily involve securing possession of another's property by deception . . . ." Gov't of the V.I. v. Moolenaar, 133 F.3d 246, 250 (3d Cir. 1998).

As a result, a conviction for embezzlement under 18 U.S.C. S 656 constitutes an offense involving fraud and deceit and qualifies as an aggravated felony under 8 U.S.C. S 1101(a)(43)(M)(i). See Moore v. Ashcroft , 251 F.3d 919, 923 (11th Cir. 2001) (holding "[t]he `intent to injure or defraud' element of the offense is established by proof that the defendant knowingly participated in a deceptive or fraudulent transaction") (citations omitted).

B.

The "dilemma" the majority wrestles with, whether Valansi embezzled more than $400,000 with the "intent to defraud," or the "intent to injure," is unnecessary to the resolution of this appeal. Knowledge satisfies the required mental state under S 656.13 Valansi pled guilty to

_____

11. Valansi's counsel ignores the fact that offenses that "involve deceit" qualify as aggravated felonies.

12. "Deceit" is defined as the "act or process of deceiving (as by falsification, concealment, or cheating)," which is in turn defined as "to be false, to betray . . . to deprive especially by fraud or stealth." Webster's Third New International Dictionary of the English Language Unabridged 584 (3d ed. 1993).

13. The Third Circuit cases the majority cites (all of which involve the "willful misapplication of funds" under S 656 rather than embezzlement) favor the government's position. "It is well settled that `intent to injure or defraud a bank exists if a person acts knowingly and if the natural result of his conduct would be to injure or defraud the bank even though this may not have been his motive.' " United States v. Krepps, 605 F.2d 101, 104 (3d Cir. 1979) (quoting United States v. Schmidt, 471 F.2d 385, 386 (3d Cir. 1972)); see also United States v. Schoenhut, 576 F.2d 1010, 1024 (3d Cir. 1978) ("Intent to injure or defraud a bank exists whenever the defendant acts knowingly and the result of his conduct would be to injure or defraud the bank, regardless of his motive."). Furthermore, "reckless disregard of the interests of the bank is equivalent to intent to

29

"knowingly and willfully" embezzling deposits"intrusted to
her custody and care." (A-90, 104-110). Because
"embezzlement" means to convert by fraud and deception,
it makes no difference whether Valansi pled guilty to
embezzlement with the "intent to injure" or the "intent to
defraud."14 Embezzlement with the "intent to injure" still

_____

injure or defraud." Krepps, 605 F.2d at 104; Schoenhut, 576 F.2d at
1024. By pleading guilty to "knowingly and wilfully" embezzling the
money, which showed a reckless disregard of the interests of the bank
and had the natural result of injuring and defrauding the bank (to
defraud "means `to cause injury or loss to (a person) by deceit' or `to
take
or withhold . . . . by calculated misstatement . . . or other deception.'
"
Supra at 21), Valansi was guilty of embezzling $400,000.00 with the
intent to injure and defraud the bank.

In discussing the mens rea requirement under S 656, we stated in
Schoenhut,

> Section 656 penalizes willful misapplication, but that term must
> be placed in context with the other acts prohibited by the section.
> It proscribes actions of one who "embezzles, abstracts," and
> "purloins." When this is read together with willful misapplication,
it
> is evident that the mens rea for the crime is not fulfilled by mere
> indiscretion or even foolhardiness on the part of the bank officer.
> His conduct must amount to reckless disregard of the bank's
> interest or outright abstraction of funds.

576 F.2d at 1024.

14. The majority's citation to United States v. Angelos, 763 F.2d 859 (7th
Cir. 1985) is inapposite. That case involved the willful misapplication of
funds rather than embezzlement. In Angelos, a bank president arranged
a loan, without the approval of the bank's board of directors, to a
business in which he owned 80 percent of stock. Convicted under 18
U.S.C. S 656 for willful misapplication of funds, Angelos argued on
appeal that because he intended to repay the loan his conduct did not
violate S 656.

The court held Angelos' argument was irrelevant not only because one
can injure a bank "by taking its money even if you intend to return it,"
but because Angelos breached his fiduciary duty to the bank and as a
result intended to defraud it. Id. at 861.

> By lending the bank's money in effect to himself in violation of
> accepted banking procedures, Angelos breached his fiduciary
> obligation to the bank, and it is irrelevant whether he thought,
and

constitutes an offense that involves fraud and deceit. Based on her guilty plea, Valansi fraudulently converted $400,000 with the intent to injure the bank and committed an aggravated felony.

III.

Valansi pled guilty to "knowingly and willingly" embezzling more than $400,000 "intrusted to her care." As a result, she committed a crime involving fraud and deceit; a crime which constitutes an aggravated felony under 8 U.S.C. S 1101(a)(43)(M)(i). For the foregoing reasons, I would affirm the judgment of the BIA.

Therefore, I respectfully dissent.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

_____

> thought correctly, that the bank would not be hurt. Intent to defraud -- which means, to take financial advantage of a confidential relationship . . . is all that is required to make out a
> violation of section 656; intent to injure the bank need not be shown.

Id. at 861-862 (citations omitted).

Even under the Angelos analysis, Valansi intended to defraud First Union as she breached her fiduciary obligation to the bank and took financial advantage of her position of trust and confidence. The majority does not discuss Valansi's breach of her fiduciary duties nor does it define "embezzlement" or apply it to these circumstances.

Because "embezzlement," unlike "willful misapplication of funds," has a precise definition ("the fraudulent appropriation of property. . . .") it is irrelevant whether Valansi fraudulently appropriated the deposits with the intent to injure or the intent to defraud the bank. Either way, she committed an offense involving "fraud."

31