

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-12-2004

# Pojilenko v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3445

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Pojilenko v. Atty Gen USA" (2004). *2004 Decisions.* Paper 242.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/242

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

―――――

No. 02-3445

―――――

EVGUENI POJILENKO,
                                        Petitioner

v.

KENNETH JOHN ELWOOD, DISTRICT DIRECTOR
IMMIGRATION AND NATURALIZATION SERVICE;
JOHN ASHCROFT, ATTORNEY GENERAL,
DEPARTMENT OF JUSTICE;
JAMES W. ZIGLAR, COMMISSIONER OF THE
IMMIGRATION AND NATURALIZATION SERVICE,
                                        Respondent

―――――

Petition for Review of an Order
of the Board of Immigration Appeals
(A70-901-902)

―――――

Submitted Under Third Circuit LAR 34.1(a)
October 7, 2004

Before:  SLOVITER, VAN ANTWERPEN and COWEN, Circuit Judges

(Filed October 12, 2004)

―――――

OPINION OF THE COURT

SLOVITER, Circuit Judge.

## I.

Evgueni Pojilenko petitions this court for review of an order of the Board of Immigration Appeals (BIA) affirming the denial by an Immigration Judge (IJ) of Pojilenko's applications for asylum, withholding of deportation, and protection under the United Nations Convention Against Torture, and Other Cruel, Inhumane or Degrading Treatment or Punishment. The Petitioner raises four issues. We can easily dispose of three of those issues: whether the BIA's affirmance without opinion violated the fundamental rules of administrative law by failing to provide Petitioner or this court with a reasoned explanation of the agency's final decision; whether the BIA's affirmance without opinion violated the Petitioner's right to due process by failing to inform Petitioner of the reasons behind its decision; and whether the IJ's decision denying Petitioner's asylum claim and ordering his removal satisfied the requirements of an affirmance without opinion (AWO) decision by meeting the "reasoned" decision requirement of administrative law.

In Dia v. Ashcroft, 353 F.3d 228 (3d Cir. 2003) (en banc), we considered similar challenges and determined that the streamlining regulations do not violate either the Immigration and Naturalization Act (INA) or the Constitution. We held that the regulations allowing the BIA to affirm an IJ decision without opinion were permissibly promulgated by the Attorney General. We reasoned that because the INA is silent on the

2

requirements for administrative appeal procedures, such procedures are within the discretion of the Attorney General. Id. at 236-238.

Pojilenko's constitutional challenge is also precluded by Dia. This court agreed that among the due process rights to which aliens, like Pojilenko, are entitled is the "right to 'an individualized determination of his [or her] interests.'" See id. at 239 (quoting Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001)). However, we concluded that the required individualized determination is afforded to asylum applicants at the IJ level. Id. at 240.

We turn therefore to Pojilenko's substantive challenge to the BIA's decision as set forth in the third issue he presents in his brief: whether the decision of the BIA to deny his asylum claim was an abuse of discretion.

Pojilenko, a twenty-six year old native of Belarus, arrived in the United States on March 30, 1993 on a visitor's visa. On January 27, 1997, he and his parents were charged by the former Immigration and Naturalization Service (INS) for overstaying their authorized visit. Pojilenko admitted the allegations set forth in the Order to Show Cause, conceded his deportability, and requested the relief of asylum, withholding of deportation, protection under the Torture Convention, and voluntary departure. Following a change of venue to Philadelphia, Pojilenko filed an application for asylum separate from his parents.

At a hearing before the IJ, Pojilenko presented a claim of past persecution on the ground of religion, as he and his parents are Greek Catholic. He testified that he and his

3

family practiced their faith by gathering periodically on weekends and major holidays at friends' homes for group prayer and worship. He stated that when he was seven years old, his teachers in Belarus would use anti-Greek Orthodox slurs at school.

Pojilenko also claimed that around that time Belarus militia ransacked his family home and in the process pushed and battered him and his mother, and that his family then fled to Poland because they believed they could not have a "normal . . . life in Belarus." RA at 72. After approximately three years in Poland, they returned to Belarus believing that "a lot . . . had changed," RA at 74-75, but when they returned, they were required to have the strangers who were living in their home evicted. Within a month they themselves were evicted by the militia who injured Pojilenko and his mother so severely that both required hospitalization. His mother suffered a concussion and Pojilenko's hands were seriously beaten with a baton. Thereafter, they stayed with friends for a night or a period of nights at a time until they fled to the United States; his mother fled in 1992 and Pojilenko and his father did so in 1993.

After reviewing Pojilenko's claims, the IJ denied Pojilenko's applications for asylum, withholding of deportation, and protection under the Torture Convention. The IJ stated that he believed that Pojilenko told the truth. However, characterizing Pojilenko's testimony as "at best sketchy," the IJ found that Pojilenko failed to meet his burden of proof on either past religious persecution or a present well-founded fear of religious persecution if he were to return to Belarus. RA at 9-11.

4

The IJ first found dubious Pojilenko's testimony of the anti-Greek Catholic taunting by his elementary school teachers, stating that it was difficult to believe not only that an elementary school teacher would engage in such behavior but that Pojilenko would be able to comprehend such treatment at age seven and to recall the experience so many years later. The IJ credited Pojilenko's report that his parents needed to worship clandestinely in friends' homes during the regime of the Soviet Union[1], but there was no evidence that either Pojilenko or his parents suffered job loss or were beaten on the basis of their religion. The IJ noted that Pojilenko's parents had not testified and that he was only seven or eight years old at the time of the events. The IJ found that Pojilenko's testimony alone did not establish persecution, as it is not clear that the militia acted with anti-religious animus.

The IJ determined that although the circumstances surrounding the ransacking of Pojilenko's home, its initial abandonment prior to the flight to Poland, and the eviction that followed the family's return to Belarus, may have been a result of religious persecution, such a determination would have been speculative, as Pojilenko provided insufficient detail about these events. Pojilenko's submission of court documents chronicling the family's final ejection from their home were just as inconclusive, as they did not indicate any discriminatory animus for the evictions. The IJ found that the

---

[1]    The IJ actually stated that Pojilenko testified that his parents "attended school" in friends' homes, but in the context of the paragraph it appears this was an erroneous transcription and this "school" should have been "church." RA at 9.

documents could ostensibly reflect eviction for a number of lawful reasons, including failure to pay taxes or abide by building codes.

The IJ further found that even if Pojilenko had established a well-founded fear of future persecution on the basis of his Greek Catholic faith, the INS had sufficiently rebutted Pojilenko's case.[2]  The Government asserted that it would be unlikely that a Greek Catholic would be subjected to religious persecution in either Belarus or Russia since the fall of the Soviet Union, given the similarity between Pojilenko's faith and Russian Orthodox, the faith more prevalent in that region.

Accordingly, the IJ found Pojilenko ineligible for asylum due to his failure to establish a well-founded fear of future persecution, which finding precluded Pojilenko's eligibility for withholding of deportation.  Because Pojilenko failed to provide any evidence that he would more likely than not be tortured if he returned to Belarus, the IJ also denied Pojilenko's claim for protection under the Torture Convention.  The IJ ordered Pojilenko to depart the United States voluntarily by November 1, 1999.

Pojilenko timely appealed the IJ's decision, which the BIA affirmed without opinion pursuant to 8 C.F.R. § 3.1(a)(7), or the so-called "streamlining regulations."[3]

---

[2]   The IJ also relied on a November 4, 1998 State Department Report of Democracy, Human Rights and Labor created specifically for Pojilenko's case.  The IJ determined that conditions in Belarus have changed to such an extent that Pojilenko would not now suffer persecution if he returned.  We need not consider whether that Report is outdated because there is other substantial evidence to support the IJ's determination.

[3]   That provision was subsequently transferred to 8 C.F.R § 1003.1.

6

Pojilenko then filed a timely Petition for Review by this court. In addition to his challenge to the streamlining regulations, which we have already rejected, Pojilenko challenges the BIA's denial of his asylum and related claims.

**II.**

We have jurisdiction to review decisions of the BIA under 8 U.S.C. § 1252. When the BIA issues an AWO under the streamlining regulations, as was the case here, the decision of the IJ is the final agency determination that we are called upon to review. See Dia, 353 F.3d at 243. We exercise plenary review of the IJ's legal conclusions. Valansi v. Ashcroft, 278 F.3d 203, 207 (3d Cir. 2002). We review the IJ's findings of fact to ensure that they are supported by "reasonable, substantial, and probative evidence on the record considered as a whole." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

We will affirm the IJ's factual findings that an alien is ineligible for asylum if substantial evidence supports the conclusion that s/he failed to prove past persecution or a well-founded fear of persecution. Abdulrahman v. Ashcroft, 330 F.3d 587, 597 (3d Cir. 2003) (citing Elias-Zacarias, 502 U.S. at 481). Under the deferential substantial evidence standard, the IJ's findings "must be upheld unless the evidence not only supports a contrary conclusion, but compels it." Abdille v. Ashcroft, 242 F.3d 477, 484 (3d. Cir. 2001) (citations omitted).

After consideration of the IJ's opinion and the administrative record, we conclude that there is substantial evidence to support the IJ's determination that Pojilenko did not

7

fulfill his burden of proof on the issue of past persecution or a well founded fear of future persecution. We have previously stated that the standard for persecution does not include "all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional. If persecution were defined that expansively, a significant percentage of the world's population would qualify for asylum in this country." Fatin v. I.N.S., 12 F.3d 1233, 1240 (3d Cir. 1993). Instead, "persecution connotes extreme behavior," such as "'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.'" Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003) (quoting Fatin, 12 F.3d at 1240). Neither the teacher's conduct nor even the ransacking by militia prior to Pojilenko's family's flight to Poland and the eventual eviction from their family home (including the physical abuse of Pojilenko and his mother) rose to the high standard of persecution without viable proof of anti-religious animus to qualify these events as religious persecution. We note in passing that we reject Petitioner's suggestion that the IJ's decision failed to satisfy the administrative law requirement of a reasoned decision. The IJ set forth the applicable law which it analyzed in light of the facts. Because substantial evidence supported the IJ's determination that Pojilenko failed to carry his burden of proof for his asylum claim as well as the IJ's findings regarding withholding of deportation and protection under the Torture Convention, we will deny the petition for review.

8